468 F.3d 199
 GREAT AMERICAN INSURANCE COMPANY, Plaintiff-Appellant,
v.
Alfred W. GROSS, Commissioner of Insurance, Bureau of Insurance, State Corporation Commission of the Commonwealth of Virginia, as Deputy Receiver of The Reciprocal Group and Reciprocal of America, in Receivership; Paula A. Flowers, Commissioner of Commerce and Insurance for the State of Tennessee, as Liquidator for Doctors Insurance Reciprocal, American National Lawyers Insurance Reciprocal and the Reciprocal Alliance; Kenneth R. Patterson; Carolyn B. Hudgins; John William "B" Crews; Judith A. Kelley; Richard W.E. "Dick" Bland; Ronald K. Davis, M.D.; Gordon D. McLean; Thomas K. Smith; Gerald R. Wages; William T. Sugg; John N. Bethay, Defendants-Appellees.
 No. 05-2069.
 United States Court of Appeals, Fourth Circuit.
 Argued: September 18, 2006.
 Decided: October 30, 2006.
 
 ARGUED: Peter Francis Lovato, III, Boundas, Skarzynski, Walsh & Black, L.L.C., Chicago, Illinois, for Appellant. J. Jonathan Schraub, Sands, Anderson, Marks & Miller, McLean, Virginia, for Appellees. ON BRIEF: Ellen D. Jenkins, Boundas, Skarzynski, Walsh & Black, L.L.C., Chicago, Illinois; James Skarzynski, Cecilia W. Kaiser, Boundas, Skarzynski, Walsh & Black, L.L.C., New York, New York; John M. Claytor, Elizabeth E.S. Skilling, Harman, Claytor, Corrigan & Wellman, Richmond, Virginia, for Appellant. Danny M. Howell, Paige A. Levy, Timothy K. Halloran, Sands, Anderson, Marks & Miller, McLean, Virginia, for Appellees John William "B" Crews, Judith A. Kelley, and Gordon D. McLean; Patrick H. Cantilo, Pierre J. Riou, Susan E. Salch, Cantilo & Bennett, L.L.P., Austin, Texas, John Conrad, JoAnne L. Nolte, The Conrad Firm, P.C., Richmond, Virginia, for Appellee Alfred W. Gross, Commissioner of Insurance, Bureau of Insurance, State Corporation Commission of the Commonwealth of Virginia, as Deputy Receiver of the Reciprocal Group and Reciprocal of America, in Receivership; Charles F. Witthoefft, Michael P. Falzone, Hirschler Fleischer, P.C., Richmond, Virginia, for Appellees Kenneth R. Patterson and Carolyn B. Hudgins; Robert M. Tyler, Christine D. Mehfoud, McGuirewoods, L.L.P., Richmond, Virginia, Robert F. Northcutt, Capell & Howard, P.C., Montgomery, Alabama, for Appellee John N. Bethay; Russell H. Roberts, Fredericksburg, Virginia, for Appellee Richard W.E. "Dick" Bland; Curtis G. Manchester, Reed Smith, L.L.P., Richmond, Virginia, William H. Farmer, J.W. Luna, Farmer & Luna, P.L.L.C., Nashville, Tennessee, for Appellee Paula A. Flowers, Commissioner of Commerce and Insurance for the State of Tennessee, as Liquidator for Doctors Insurance Reciprocal, American National Lawyers Insurance Reciprocal and THE Reciprocal Alliance; Dana J. Finberg, Leclair Ryan, P.C., Richmond, Virginia, for Appellee Thomas K. Smith; David N. Anthony, Mark C. Shuford, Kaufman & Canoles, P.C., Richmond, Virginia, G. Brian Jackson, Robert L. Trentham, Taylor B. Mayes, Miller & Martin, P.L.L.C., Nashville, Tennessee, for Appellee William T. Sugg; Frank N. Cowan, Deborah S. O'Toole, Cowan & Jowen, P.C., Richmond, Virginia, for Appellee Ronald K. Davis; David M. Harris, Ryan J. Gavin, Andrew Margrabe, Greensfelder, Hemker & Gale, P.C., St. Louis, Missouri, Bruce M. Marshall, Durrettebradshaw, P.L.C., Richmond, Virginia, for Appellee Gerald R. Wages.
 Before WILLIAMS, Circuit Judge, HAMILTON, Senior Circuit Judge, and RICHARD L. VOORHEES, United States District Judge for the Western District of North Carolina, sitting by designation.
 Vacated and remanded by published opinion. Senior Judge HAMILTON wrote the opinion, in which Judge WILLIAMS and Judge VOORHEES joined.
 OPINION
 HAMILTON, Senior Circuit Judge:
 
 
 1
 Before its financial collapse in 2003, Reciprocal of America (ROA) was a reciprocal insurer and reinsurer of a variety of insurance risks. The Reciprocal Group (TRG), which suffered a similar collapse in 2003, served as the management company and attorney-in-fact for ROA. In January 2000, Great American Insurance Company (Great American) issued ROA and TRG a $10,000,000 directors' and officers' liability policy (The Policy) and, in May 2001, granted a request to increase the limit of liability (the Increased Limit) to $20,000,000. The collapse of both ROA and TRG spawned a series of civil lawsuits in Alabama state court and numerous federal district courts, as well as criminal proceedings against two officers of ROA and TRG in the United States District Court for the Eastern District of Virginia. Following the guilty pleas in the criminal proceedings, Great American brought this action in the United States District Court for the Eastern District of Virginia against, inter alia, numerous officers and directors of ROA and TRG, seeking rescission of the Policy and the Increased Limit, recovery of certain defense costs advanced in the pending civil litigation, and a variety of declarations. Relying on its concern that allowing Great American's case to proceed would result in unnecessary entanglement with the civil actions in state and federal court, the district court abstained from entertaining Great American's suit and dismissed the case without prejudice. Great American appeals, and we now vacate the district court's judgment and remand for further proceedings.
 
 
 2
 * As reciprocal insurers and reinsurers transacting or licensed to transact business in Virginia, ROA and TRG were subject to regulation by Virginia law.[1] ROA initially provided reinsurance only to hospitals, but later began to reinsure physicians and lawyers and to provide reinsurance coverage for various other lines of business.
 
 
 3
 Reciprocal insurance results from the mutual exchange of insurance contracts among "persons" in an unincorporated association under a common name through an attorney-in-fact having authority to obligate each subscriber both as insured and insurer. Va.Code Ann. § 38.2-1201(A). As a reciprocal insurer, ROA operated through its attorney-in-fact, TRG. Attorneys-in-fact act on behalf of reciprocal insurance companies to perform management duties. Thus, TRG had the authority to obligate ROA's subscribers on reciprocal insurance contracts and to act for and bind each and every ROA subscriber in all transactions relating to, or arising out of, the operations of ROA. Id. § 38.2-1201(B).Under Virginia law, ROA was required to submit annual financial statements prepared in accordance with statutory accounting practices. Id. § 38.2-1300(A). The purpose of this requirement was to ensure that ROA maintained a sufficient financial cushion to enable it to pay claims through difficult financial times. This cushion was required to be maintained through statutory surplus capital requirements.
 
 
 4
 In late 1999, ROA/TRG submitted to Great American a request for renewal of their directors' and officers' liability insurance policy. As part of the underwriting process, Great American undertook a comprehensive review of ROA and TRG. Specifically, in connection with the underwriting of the Policy, Great American received and reviewed a copy of the proposal form (Policy Proposal Form) that was signed by the president and CEO of both ROA and TRG, Kenneth Patterson, on or about January 4, 2000, and submitted to Great American in connection with ROA's and TRG's procurement of the Policy.
 
 
 5
 Attached to the Policy Proposal Form were, among other things, the audited financial statements of ROA and TRG for the most recent three years and their most recent interim financial statements. The Policy Proposal Form stated that these financial statements were made a part of the proposal. The Policy Proposal Form also represented that the statements made therein were true and correct and that reasonable efforts had been made to obtain sufficient information from each and every director or officer to facilitate the proper and accurate completion of the Policy Proposal Form.
 
 
 6
 Based on its review of the completed Policy Proposal Form and financial statements, Great American issued the Policy in early 2000 to ROA and TRG for the period of December 1, 1999 to December 1, 2002. By endorsement, the Policy period was extended to December 31, 2003 for wrongful acts committed before December 31, 2002. The Policy as originally issued had an aggregate limit of liability of $10,000,000. According to Great American, it issued the Policy in reliance upon, among other things, the accuracy and integrity of the Policy Proposal Form and the financial statements signed by ROA's and TRG's directors and officers and filed with the Virginia Commissioner of Insurance.
 
 
 7
 Before agreeing to the Increased Limit in May 2001, Great American required ROA and TRG to answer the following question appearing on a proposal form (the Increased Limit Proposal Form):
 
 
 8
 Is the undersigned or any Director or Officer proposed for the increased Limit of Liability aware of any fact, circumstance or situation involving the Company or its Subsidiaries or the Directors or Officers of the Company or its Subsidiaries which he has reason to believe might result in any future Claim which would fall within the scope of the Increased Limit of Liability? If "Yes," provide details.
 
 
 9
 (J.A. 118-19). Patterson, who signed the Increased Limit Proposal Form in mid to late April 2001, responded "No" to this question. (J.A. 118).
 
 
 10
 The Increased Limit Proposal Form Patterson signed includes the following statement:
 
 
 11
 The undersigned . . . declare that to the best of their knowledge the statements set forth herein are true and correct and that reasonable efforts have been made to obtain sufficient information from each and every Director or Officer proposed for this Endorsement for the increase in coverage to facilitate the proper and accurate completion of this Proposal Form. The undersigned further agrees that if any significant adverse change in the condition of the applicant is discovered between the date of this Proposal Form and the effective date of the Endorsement for the increase in coverage, which would render the Proposal Form inaccurate or incomplete, notice of such change will be reported in writing to the Insurer immediately.
 
 
 12
 (J.A. 119).
 
 
 13
 Like the Policy Proposal Form, the Increased Limit Proposal Form also includes the following paragraph:
 
 
 14
 It is agreed by the COMPANY and the DIRECTORS and OFFICERS that the particulars and statements contained in the Proposal Form, (a copy of which will be attached to the Policy), and any material submitted therewith . . . are the basis of the Policy and are to be considered as incorporated in and constituting a part of this Policy. It is further agreed by the COMPANY and the DIRECTORS and OFFICERS that the statements in the Proposal Form or in any material submitted therewith are their representations, that they are material and that this Policy is issued in reliance upon the truth of such representations; provided, however, that except for material facts or circumstances known to the persons(s) who subscribed the Proposal Form, any misstatement or omission in such Proposal Form or materials submitted therewith in respect of a specific WRONGFUL ACT by a particular DIRECTOR or OFFICER or his cognizance by any matter which he has reason to suppose might afford grounds for a future CLAIM against him shall not be imputed to any other DIRECTOR or OFFICER for purposes of determining the validity of this Policy as to such other DIRECTOR or OFFICER.
 
 
 15
 (J.A. 119).
 
 
 16
 In January 2003, a state circuit court in Richmond, Virginia placed ROA and TRG into receivership and, in June 2003, ordered that the companies be liquidated. In January 2003, a Tennessee chancery court placed ROA's Tennessee affiliates into receivership and, in June 2003, ordered that they be liquidated. The Insurance Commissioner of Virginia, Alfred Gross, is serving as the deputy receiver of ROA and TRG, and the Insurance Commissioner of Tennessee, Paula Flowers, is serving as liquidator of ROA's Tennessee affiliates.
 
 
 17
 Following ROA's collapse and the resultant failure of its insurance company affiliates, policyholders left without coverage and the Commissioners sued numerous former directors and officers of ROA and TRG in actions now pending before the United States District Court for the Western District of Tennessee as MDL 1551 and in Alabama state court (collectively, the Underlying Actions). Generally, the plaintiffs in the Underlying Actions allege that, beginning in 1991, the defendants engaged in a protracted scheme to defraud regulators, insurance rating services, policyholders, creditors, and the public into believing that ROA and its affiliates were financially sound when, in fact, they were not. These plaintiffs assert numerous statutory, tort, and equitable claims arising from the collapse of ROA and its subsidiaries, including, among others, violations of RICO, conspiracy, fraud, tortious interference with a trust agreement, and breach of fiduciary duty. After the initiation of the Underlying Actions, Great American agreed to advance the defendants' defense costs, subject to a full reservation of rights.
 
 
 18
 In late 2003, the United States Attorney for the Eastern District of Virginia began to investigate the facts and circumstances surrounding the collapse of ROA and its related companies. On February 7, 2005, Patterson pled guilty to a three-count criminal information, brought in federal court in the Eastern District of Virginia, charging him with one count of conspiracy to commit insurance fraud and two counts of mail fraud. That same day, Carolyn Hudgins, a former executive vice president of both TRG and ROA, pled guilty to a one-count criminal information, likewise brought in federal court in the Eastern District of Virginia, charging her with conspiracy to commit insurance fraud. The district court accepted Patterson's and Hudgins' guilty pleas on February 7, 2005. On June 28, 2005, Patterson was sentenced to 150 months' imprisonment and Hudgins was sentenced to sixty months' imprisonment.
 
 
 19
 Hudgins' guilty plea reveals that, beginning in at least the late 1990s, she and others were engaged in a complex scheme to commit insurance fraud. Patterson's guilty plea reveals that, when Patterson signed the Increased Limit Proposal Form in April 2001, he was actively participating in an ongoing criminal conspiracy to defraud insurance regulators and others about the financial condition of ROA. In his guilty plea, Patterson admitted that, by at least March 2001, he had joined the conspiracy and that, in or about March 2001, he recognized that he and his coconspirators had mischaracterized a $10,000,000 transaction on ROA's books and records.
 
 
 20
 Following the guilty pleas of both Patterson and Hudgins, Great American filed the instant four-count complaint against, inter alia, numerous officers and directors of ROA and TRG.[2] The complaint sought: (1) rescission of the Policy and the Increased Limit based on numerous fraudulent and material misrepresentations made in conjunction with the procurement of the Policy and the Increased Limit; (2) recovery of defense costs advanced in the Underlying Actions and a declaration that the Policy obligates the Insureds to refund these costs; (3) a declaration that the Policy's fraud exclusion (the Fraud Exclusion) bars coverage for all losses, including defense costs incurred by Patterson; and (4) a declaration that the Fraud Exclusion bars coverage for all losses, including defense costs incurred by Hudgins.[3]
 
 
 21
 In conjunction with its lawsuit, Great American notified the Insureds that it intended to commence a lawsuit, and, as required by Virginia law, Great American tendered the premiums paid to Gross, as representative of ROA and TRG. In light of the guilty pleas and invoking the Policy's Fraud Exclusion, Great American also stopped advancing Patterson's and Hudgins' defense costs and demanded the return of all defense costs it had previously advanced them. Great American, however, continued to advance defense costs to the other Insureds. On May 3, 2005, the district court, in a preliminary injunction, ordered Great American to continue advancing Patterson's and Hudgins' defense costs pending a ruling on the merits.
 
 
 22
 While this case was pending, several of the Insureds requested that the Judicial Panel for Multidistrict Litigation (the MDL Panel) transfer the case to the Western District of Tennessee as a tag-along action to MDL 1551. As far as we can tell from the record, the MDL Panel declined the request for transfer, concluding that the complaint in this case was not related to MDL 1551.
 
 
 23
 The Insureds then moved to dismiss Great American's complaint, arguing, inter alia, that the district court had the discretionary authority to dismiss the action in favor of the concurrent litigation in the Underlying Actions. On August 19, 2005, the district court granted the motion, dismissing the complaint without prejudice. On September 2, 2005, Great American filed a motion for leave to file an amended complaint, which was denied by the court on September 13, 2005. Great American filed a timely notice of appeal.[4]
 
 II
 
 24
 On appeal, Great American contends that the district court erred when it abstained from entertaining its claims for rescission and for recovery of certain defense costs in the Underlying Actions. Unlike the remaining claims in Great American's complaint, these two claims request nondeclaratory relief.
 
 
 25
 We review the district court's abstention decision for an abuse of discretion. Chase Brexton Health Servs., Inc. v. Maryland, 411 F.3d 457, 464 (4th Cir.2005). In exercising its discretion to abstain, the court concluded that allowing Great American's case to proceed would result in unnecessary entanglement with the Underlying Actions. According to the court, the issues necessary to resolve Great American's claims would necessarily be resolved in the Underlying Actions. To avoid piecemeal litigation and potentially inconsistent results, the court dismissed Great American's compliant without prejudice.
 
 
 26
 It is well-settled that "our dual system of federal and state governments allows parallel actions to proceed to judgment until one becomes preclusive of the other." Id. at 462. Indeed, "[d]espite what may appear to result in a duplication of judicial resources, `[t]he rule is well recognized that the pendency of an action in the state [system] is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.'" McLaughlin v. United Va. Bank, 955 F.2d 930, 934 (4th Cir.1992) (quoting McClellan v. Carland, 217 U.S. 268, 282, 30 S.Ct. 501, 54 L.Ed. 762 (1910)). Moreover, the Supreme Court has cautioned that federal courts are bound by a "virtually unflagging obligation . . . to exercise the jurisdiction given them." Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). As we noted in Chase Brexton, "[f]ederal courts' have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not.'" 411 F.3d at 462 (quoting Cohens v. Virginia, 19 U.S. (6 Wheat.) 264, 404, 5 L.Ed. 257 (1821)).
 
 
 27
 The Supreme Court, however, has indicated that, in certain limited instances, "federal courts may decline to exercise their jurisdiction, in otherwise `exceptional circumstances,' where denying a federal forum would clearly serve an important countervailing interest." Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (quoting Colorado River, 424 U.S. at 813, 96 S.Ct. 1236). "These `exceptional circumstances' inevitably relate to a policy of avoiding unnecessary constitutional decisions and of accommodating federal-state relations." Chase Brexton, 411 F.3d at 462.[5]
 
 
 28
 In Colorado River, the Court noted that there were "principles unrelated to considerations of proper constitutional adjudication and regard for federal-state relations which govern in situations involving the contemporaneous exercise of concurrent jurisdictions, either by federal courts or by state and federal courts." 424 U.S. at 817, 96 S.Ct. 1236. According to the Court, these principles rested on considerations of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." Id. (citation and internal quotation marks omitted). In general, the pendency of an action in state court is no bar to proceedings in federal court concerning the same matter. Id. As between two federal district courts, the general rule is that duplicative litigation should be avoided. Id.; cf. Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180, 183-84, 72 S.Ct. 219, 96 L.Ed. 200 (1952) (permitting a district court to stay a declaratory judgment action in the District of Delaware in favor of an underlying patent infringement action in the Northern District of Illinois to avoid duplicative litigation). The Court explained that the difference in approach between federal-state concurrent jurisdiction and wholly federal concurrent jurisdiction stemmed from the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." Colorado River, 424 U.S. at 817, 96 S.Ct. 1236. As the Court explained:
 
 
 29
 Given this obligation, and the absence of weightier considerations of constitutional adjudication and state-federal relations, the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention. The former circumstances, though exceptional, do nevertheless exist.
 
 Id. at 818, 96 S.Ct. 1236.[6]
 
 30
 In assessing whether Colorado River abstention is appropriate, we must remain mindful that this form of abstention "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it" and that "[a]bdication of the obligation to decide cases can be justified under [abstention] only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." Id. at 813, 96 S.Ct. 1236 (citation and internal quotation marks omitted). Accordingly, our task "is not to find some substantial reason for the exercise of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist `exceptional' circumstances, the `clearest of justifications,' . . . to justify the surrender of that jurisdiction." Moses H. Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 25-26, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (citation and internal quotation marks omitted).
 
 
 31
 The threshold question in deciding whether Colorado River abstention is appropriate is whether there are parallel federal and state suits. Chase Brexton, 411 F.3d at 463. If parallel suits exist, then we must carefully balance several factors "with the balance heavily weighted in favor of the exercise of jurisdiction." Moses H. Cone, 460 U.S. at 16, 103 S.Ct. 927. Although the decision to dismiss a federal suit because of parallel state-court litigation does not rest on a checklist, id., six factors have been identified to guide the analysis: (1) whether the subject matter of the litigation involves property where the first court may assume in rem jurisdiction to the exclusion of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5) whether state law or federal law provides the rule of decision on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights. Chase Brexton, 411 F.3d at 463-64. In the final analysis, abstention is the exception, not the rule, and it may be considered only when "the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." Moses H. Cone, 460 U.S. at 28, 103 S.Ct. 927.
 
 
 32
 Turning to whether the present action is parallel to the actions in Alabama state court, while it is true that the parties in Colorado River were not identical to the parties in the "parallel" state action, at least the federal plaintiff was a party to the state action. 424 U.S. at 805-06, 96 S.Ct. 1236. In this case, Great American is not a party to any of the Alabama state court actions. Accordingly, to abstain in favor of the Alabama state court actions would deprive Great American of the opportunity to litigate its claims. Moreover, we have strictly construed the requirement of parallel federal and state suits, requiring that the parties involved be almost identical. "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." Chase Brexton, 411 F.3d at 464 (internal quotation marks omitted).
 
 
 33
 In addition to the lack of similarity of the parties, the scope of Great American's claims are not parallel. The issues in Great American's action (which include whether Great American can rescind the Policy and whether it can recover money advanced for defense costs) and the issues in the cases being litigated in Alabama state court are dissimilar. Whether Patterson lied when he completed the Proposal Forms, whether Great American's underwriter relied on his lies, and whether they were material to the risk Great American undertook when it issued the Policy and, later, doubled its liability limit, are questions of fact and law that will not be resolved in any other action. Moreover, the remedies sought by Great American and the plaintiffs in the Alabama state court actions are entirely different. The Alabama state court actions have nothing to do with insurance remedies (such as rescission and the recovery of money advanced for defense costs) and, thus, will not provide an adequate vehicle for the complete and prompt resolution of the issues between the parties in this case. More critically, there is no guarantee that the issues litigated in the Alabama state court actions will include the facts necessary for Great American to prove its claim for rescission and its claim for recovery of certain defense costs. The issues raised in the Alabama state court actions generally pertain to acts intended to defraud regulators, insurance rating services, policyholders, creditors, and the public over an extended period of time, while this case concerns a more discrete period of time and ROA's and TRG's contacts with Great American. While it is conceivable that the plaintiffs in the Alabama state court actions will attempt to prove that the information allegedly relied upon by Great American was fraudulent, it does not necessarily follow that the plaintiffs are required to do so to prevail in the Alabama state court actions. It may well be that the plaintiffs in the Alabama state court actions will rely on other fraudulent conduct, unrelated to the facts necessary for Great American to prove its case. Thus, the district court simply was incorrect when it concluded that all of the issues necessary to resolve Great American's case would be resolved in the Underlying Actions. Without going further, it is evident that the district court erred when it dismissed Great American's claim for rescission and claim to recover money advanced for defense costs in favor of the concurrent Alabama state court actions.
 
 
 34
 Even if we get to the Colorado River factors, they favor Great American. Consideration of the first and second factors—whether the subject matter of the state court litigation involves in rem jurisdiction or whether the federal forum is an inconvenient one—do not provide any support for abstention. With respect to the third factor, the desirability of avoiding piecemeal litigation, as noted above, the issues in this action and in the Alabama state court actions are dissimilar. The rescission claim and the claim to recover money advanced for defense costs involve the nuances of insurance law, while the Alabama state court actions do not. Moreover, as noted above, it is not a foregone conclusion that the litigation in the Alabama state court actions will include factual findings necessary to resolve the issues presented in this case. Thus, given the marked differences between the critical factual and legal issues presented in the different forums, the danger of piecemeal litigation is remote, at best.
 
 
 35
 The fourth factor—the order in which jurisdiction was obtained by the courts—does counsel in favor of abstention since the plaintiffs in the Alabama state court actions filed their claims before Great American filed the instant action and the litigation in Alabama state court is further along. See Moses H. Cone, 460 U.S. at 21, 103 S.Ct. 927. The fifth factor—whether state law or federal law provides the rule of decision on the merits—is a nonfactor because, although the insurance issues presented require application of Virginia law, there is no related proceeding in any Virginia state court. The only related state court proceedings are underway in Alabama. On balance, Virginia's interest would seem better served by having the coverage issues decided by a federal court sitting in Virginia, rather than a state court sitting in Alabama. Moreover, considering the district court's familiarity with Patterson's and Hudgins' criminal proceedings, it is reasonable to conclude that it is better suited than an Alabama state court to resolve Great American's rescission claim and its claim to recover money it advanced for defense costs.
 
 
 36
 The sixth factor—whether the state court proceeding will adequately protect the rights of the parties seeking to invoke federal jurisdiction—also weighs against abstention. As noted, the Alabama state court actions do not involve the nuances of Virginia insurance law and, as a nonparty to the state court litigation, it is a debatable question whether Great American would be precluded from relitigating any overlapping issues, if there are any.
 
 
 37
 In tallying the relevant factors and considering them against the larger policies underlying Colorado River abstention, we conclude that this case does not present exceptional circumstances justifying a federal court surrendering its jurisdiction.
 
 
 38
 Having concluded that the district court erred when it abstained from deciding Great American's rescission claim and the claim seeking to recover money advanced for defense costs, we are left with the question of whether the court was at liberty at that point to abstain from entertaining the declaratory claims. While it is true that the granting of declaratory relief is entrusted to the discretion of the district court, see 28 U.S.C. § 2201 (providing that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration"), see also Wilton v. Seven Falls Co., 515 U.S. 277, 286, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995) (noting that, in the case of declaratory judgment actions, courts have greater discretion to defer to a parallel state proceeding); Brillhart v. Excess Ins. Co., 316 U.S. 491, 495, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942) (same), "when a plaintiff seeks relief in addition to a declaratory judgment, . . . then the entire benefit derived from exercising discretion not to grant declaratory relief is frustrated, and a stay would not save any judicial resources." Chase Brexton, 411 F.3d at 466. Moreover, when the claims for which declaratory relief are requested are so closely intertwined with the nondeclaratory claims, "judicial economy counsels against dismissing the claims for declaratory judgment relief while adjudicating" the nondeclaratory claims. Id. at 466-67. Under Chase Brexton, once the court was required to entertain Great American's rescission claim and the claim seeking to recover money advanced for defense costs, it was not at liberty to abstain from entertaining the declaratory claims because the claims were so intertwined with the nondeclaratory claims.
 
 
 39
 In support of the district court's abstention decision, the Insureds argue that, because the complaint alleges both declaratory and nondeclaratory claims, we are at liberty to apply the more relaxed standard governing claims brought under the Declaratory Judgment Act, 28 U.S.C. § 2201, to Great American's entire complaint, even the claims requesting nondeclaratory relief. As noted above, under Colorado River, federal litigation may be stayed in favor of parallel state proceedings only under exceptional circumstances. 424 U.S. at 817, 96 S.Ct. 1236. Moreover, in the case of declaratory judgment actions, courts have greater discretion to defer to a parallel state court proceeding under the discretionary standard developed in Brillhart and Wilton. See Wilton, 515 U.S. at 286, 115 S.Ct. 2137; Brillhart, 316 U.S. at 495, 62 S.Ct. 1173.[7] When a complaint states claims for both nondeclaratory and declaratory relief, there is a question as to which standard—Colorado River or Brillhart/Wilton—governs the decision whether to order a stay in favor of the parallel state proceedings. Some courts have held that the Brillhart/Wilton discretionary standard is per se supplanted by the harsher Colorado River standard whenever an action includes both declaratory and nonfrivolous nondeclaratory claims. See Kelly Inv., Inc. v. Continental Common Corp., 315 F.3d 494, 497 n. 4 (5th Cir.2002); Village of Westfield v. Welch's, 170 F.3d 116, 124 n. 5 (2d Cir.1999). Other courts hold that jurisdiction is mandatory (subject only to Colorado River constraints) if the nondeclaratory claims can exist independently of the declaratory claims, such that they could survive even if the declaratory claims vanished. See United Nat'l Ins. Co. v. R & D Latex Corp., 242 F.3d 1102, 1112-13 (9th Cir.2001). Another view, embraced by some district courts, looks to the "heart of the action" to determine if the Colorado River or the Brillhart/Wilton standard should apply. See, e.g. ITT Indus., Inc. v. Pacific Employers Ins. Co., 427 F.Supp.2d 552, 555-56 (E.D.Pa.2006). Under this standard, if the outcome of the nondeclaratory claims hinges on the outcome of the declaratory ones, the Brillhart/Wilton standard governs; conversely, if the opposite applies, the Colorado River standard controls. See Lexington Ins. Co. v. Rolison, 434 F.Supp.2d 1228, 1236 (S.D.Ala.2006).
 
 
 40
 Our jurisprudence suggests that, in a "mixed" complaint scenario, the Brillhart/Wilton standard does not apply, at least to the nondeclaratory claims. For example, in Chase Brexton, we stated that the Brillhart/Wilton standard does not apply when a declaratory judgment claim is joined with a nondeclaratory claim, such as a claim for damages or injunctive relief. 411 F.3d at 466-67. Because a court is required to address nondeclaratory claims, per Colorado River, we observed that the benefit derived from exercising discretion not to grant declaratory relief is frustrated. Id. at 466.
 
 
 41
 In Myles Lumber Company v. CNA Financial Corporation, we held that a district court had no discretion to remand claims for damages joined with a claim for declaratory relief. 233 F.3d 821, 823-24 (4th Cir.2000). In so holding, we noted that a claim that seeks a declaration under an insurance contract arguably presents a claim for damages. Id. at 824 n. 2. In view of this latter holding, we applied the Brillhart/Wilton standard to the declaratory claim, assuming without deciding that the standard applied to the declaratory claim at issue. Id. at 824.
 
 
 42
 We need not express a definitive view on this point to resolve the Insureds' argument, because even if we applied the more relaxed Brillhart/Wilton standard to Great American's complaint, the result would not change. To determine whether to proceed with a federal declaratory judgment action when a parallel state court action is pending, we have focused on four factors: (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state court could resolve the issues more efficiently than the federal court; (3) whether the presence of overlapping issues of fact or law might create unnecessary entanglement between the state and federal court; and (4) whether the federal action is mere procedural fencing in the sense that the action is merely the product of forum shopping. Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371, 377 (4th Cir.1994).
 
 
 43
 Initially, we do not think there is a compelling state interest in having the particular issues raised in this action decided in the state courts of Alabama. As noted, all of the issues of insurance coverage raised here are governed by the substantive law of Virginia, not Alabama. But even if there was a Virginia state case pending, that fact alone would not provide a justification for declining to exercise federal jurisdiction. In analogous situations in which a federal court possesses discretionary power to abstain from deciding state-law questions otherwise properly within its jurisdiction, that discretion may be exercised only when the questions of state law involved are difficult, complex, or unsettled. Id. at 378. In this case, the questions of state law raised in the federal action are not difficult or problematic; instead, they involve the routine application of settled principles of insurance law to particular disputed facts. Virginia's interest in having those issues decided in its own courts, which is no stronger than it is in any case in which a federal court has jurisdiction over a claim in which state law provides the rule of decision, is not sufficiently compelling to weigh against the exercise of federal jurisdiction. Id.
 
 
 44
 As to the second factor, we cannot conclude that the issues raised in this action can be more efficiently resolved in the Alabama state courts. In evaluating these efficiency concerns, the Supreme Court has directed us to focus primarily on "whether the questions in controversy between the parties to the federal suit . . . can better be settled in the proceeding[s]" that are already "pending in the state court[s]." Brillhart, 316 U.S. at 495, 62 S.Ct. 1173. This in turn requires careful inquiry into "the scope of the pending state court proceeding [s]," including such matters as "whether the claims of all parties in interest [to the federal proceeding] can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, [and] whether such parties are amenable to process in that proceeding." Id.
 
 
 45
 After examining the scope of the pending state court proceedings in Alabama, we cannot say with any confidence that the issues raised in this federal action can better be resolved in those proceedings, or necessarily be resolved at all. As noted above, the basic dispute here involves insurance coverage and is comparatively more limited in scope than the proceedings in Alabama state court. Insurance coverage issues are not directly raised in the pending state court proceedings, which involve entirely separate and independent questions of liability. Moreover, it is not clear to us that Great American can become part of the Alabama state court actions. Finally, that the issues raised here might be resolved in some yet-to-be filed action brought in Virginia state court is not alone sufficient to justify dismissal of this action. See Nautilus Ins. Co., 15 F.3d at 379.
 
 
 46
 As to the third factor, permitting this federal action to go forward would not result in the unnecessary entanglement between the federal and state court systems. This is not a case where many of the issues of law and fact sought to be adjudicated in the federal action are already being litigated by the same parties in the related state court action. As noted above, the basic issue sought to be resolved here involves insurance coverage, and Great American is not even a party in any of the Alabama state court actions, which involve distinct and more factually complex issues.
 
 
 47
 Finally, we are satisfied that the federal action pending here is not being used merely as a device for procedural fencing. This is not a case in which a party has raced to federal court in an effort to get certain issues that are already pending before the state courts resolved first in a more favorable forum, for the issues presented in this action are not the same as those raised in the pending Alabama state court actions. This action was filed in an entirely proper effort to obtain prompt resolution of a dispute over a liability insurer's obligation to its insureds and to recover money the insurer claims it was entitled to recover. This dispute is separate and independent from the ongoing litigation in Alabama state court. Moreover, Great American chose a commendable path, by paying defense costs while pursuing rescission and the recovery of those costs, instead of simply rescinding unilaterally and waiting to be sued. Under these circumstances, it cannot be said that Great American is engaging in procedural fencing. Thus, even if we were to apply the discretionary Brillhart/Wilton standard, we would be constrained to conclude that the court below abused its discretion when it abstained from entertaining the claims raised in Great American's complaint.
 
 III
 
 48
 For the reasons stated herein, the judgment of the district court is vacated and the case is remanded for further proceedings consistent with this opinion.
 
 
 49
 
 VACATED AND REMANDED.
 
 
 
 
 Notes:
 
 
 [1]
 Both ROA and TRG had their principal places of business in Richmond, Virginia, although they had a number of insurance company affiliates in other states, including Tennessee and Alabama
 
 
 [2]
 In its complaint, Great American did not name each and every officer of ROA and TRG named in the Underlying Actions. Accordingly, the relief sought by Great American only applies to the officers and directors named in Great American's complaint. For ease of reference, we will refer to the officers and directors named in Great American's complaint as the Insureds
 
 
 [3]
 The Fraud Exclusion provides as follows:
 The Insurer shall not be liable to make any payment for Loss in connection with any Claim made against the Directors and Officers . . . brought about or contributed to by the fraudulent, dishonest or criminal acts of the Directors or Officers; provided, however, that this exclusion shall not apply unless it is established in fact that such Claim was brought about or contributed to by fraudulent, dishonest or criminal acts of the Directors and/or Officers.
 (J.A. 47).
 
 
 [4]
 We note that the dismissal of the complaint dissolved the preliminary injunction entered by the district court on May 3, 2005See Wyandotte Nation v. Sebelius, 443 F.3d 1247, 1253 n. 10 (10th Cir.2006) (noting that, although a preliminary injunction usually is not subject to a fixed time limit, it is dissolved by dismissal of the complaint); Venezia v. Robinson, 16 F.3d 209, 211 (7th Cir.1994) (noting that a preliminary injunction cannot survive dismissal of the complaint).
 
 
 [5]
 For example, we noted inChase Brexton, 411 F.3d at 462 n. 1, that the Supreme Court has held that federal courts have the power to refrain from entertaining: (1) cases that would interfere with a pending state criminal proceeding, see Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), or with certain types of state civil proceedings, see Huffman v. Pursue, Ltd., 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); (2) cases in which the resolution of a federal constitutional question might be mooted if the state courts were given the opportunity to interpret ambiguous state law, see R.R. Comm'n of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); (3) cases raising issues "intimately involved with [the States'] sovereign prerogative," the proper adjudication of which might be impaired by unsettled questions of state law, see La. Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 28, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959); (4) cases whose resolution might interfere with state schemes for the collection of taxes, see Great Lakes Dredge and Dock Co. v. Huffman, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943); and (5) cases involving complex state administrative procedures, see Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).
 
 
 [6]
 This court inChase Brexton and several other circuits have amplified the general policy against concurrent federal litigation expressed in Colorado River. Basically, these decisions suggest that a district court may stay or dismiss a suit that is duplicative of another federal court suit as part of its general power to administer its docket. See Chase Brexton, 411 F.3d at 463; Missouri ex rel. Nixon v. Prudential Health Care Plan, Inc., 259 F.3d 949, 953-54 (8th Cir.2001); Curtis v. Citibank, N.A., 226 F.3d 133, 138 (2d Cir. 2000); Serlin v. Arthur Andersen & Co., 3 F.3d 221, 223 (7th Cir.1993); Zerilli v. Evening News Ass'n, 628 F.2d 217, 222 (D.C.Cir.1980); Walton v. Eaton Corp., 563 F.2d 66, 70 (3d Cir.1977) (en banc). In this case, there is no evidence that Great American's action is duplicative to any of the actions pending in MDL 1551, in the sense that it involves the same parties and the same controversy, and that MDL 1551 offers a definitive and comprehensive avenue to resolve the issues raised in this case. Indeed, as far as we can tell from the record, the MDL Panel declined a request to transfer this case to MDL 1551 as a tag-along action, concluding this action was not related to the actions pending before the MDL Panel. For these reasons, we will confine our Colorado River analysis to determining whether the district court erred when it dismissed Great American's action in favor of the concurrent Alabama state court litigation. There are no adverse consequences to this analytical approach, as the parties seem to concede that the liability issues raised in MDL 1551 are analogous to the issues raised in Alabama state court.
 
 
 [7]
 The broad discretionaryBrillhart/Wilton standard governing a district court's determination whether to exercise jurisdiction over a declaratory judgment action in which there are parallel state court proceedings differs from the Colorado River exceptional circumstances standard because "[d]istinct features of the Declaratory Judgment Act . . . justify a standard vesting district courts with greater discretion in declaratory judgment actions." Wilton, 515 U.S. at 286, 115 S.Ct. 2137. In such a context, obligatory jurisdiction yields to considerations of practicality and wise judicial administration. Id. at 288, 115 S.Ct. 2137.