Affirmed by unpublished opinion.
Judge WILKINSON wrote the majority opinion, in which Judge DUNCAN joined. Judge DAVIS wrote a dissenting opinion.
Unpublished opinions are not binding precedent in this circuit.
WILKINSON, Circuit Judge:
Plaintiff-appellant Ronald J. Riley (“Riley”) commenced this action to obtain a declaratory judgment that he was not liable to defendants-appellees John W. Dozier, Jr. (“Dozier”) and Dozier Internet Law, P.C. (“DIL”) for defamation or trademark infringement. The district court abstained from exercising jurisdiction and consequently dismissed the action so that the dispute could be resolved in a pending state court proceeding in which DIL had sued Riley for trademark infringement. Reviewing for abuse of discretion, we hold that the district court’s decision to abstain was within its discretion under Wilton v. Seven Falls Co., 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995) and Brillhart v. Excess Ins. Co., 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942). Accordingly, we affirm the judgment.
I.
Defendant Dozier is a Virginia lawyer and founder of defendant DIL, a Virginia law firm that specializes in intellectual property law. Dozier maintains a website for his law firm at cybertriallawyer.com. The underlying dispute in this case arose when plaintiff Riley, a Michigan resident and head of a nonprofit corporation, created the website cybertriallawyer-sucks.com. As the name of the website suggests, cy-bertriallawyer-sucks.com was critical of Dozier and his law firm.
The first lawsuit was initiated in Virginia state court on September 4, 2008. In that suit, DIL sued Riley for trademark infringement, alleging that Riley’s website infringed on the name “Dozier Internet Law, P.C.,” a registered trademark with the Commonwealth of Virginia. In response to the state action, on October 2, 2008, Riley filed his own lawsuit in the United States District Court for the Eastern District of Virginia. Riley brought the action against both Dozier personally and DIL. In his complaint, Riley sought a declaratory judgment that his website neither defamed Dozier nor infringed on DIL’s trademark. Riley also sought an *401 injunction against any future claims of defamation or trademark infringement and damages caused by the attempted suppression of his website, including “nominal damages,” “punitive damages ... in the amount of $1000,” and “reasonable attorney’s fees and costs.” Simultaneously with the filing of his complaint, Riley also attempted to remove the state court action to federal court.
Upon motions by the defendants, the district court remanded the case back to state court and dismissed the case. In dismissing, the district court explained that even if it had subject matter jurisdiction over the case, it “deeline[d] to adjudicate this case under the abstention doctrine established in Burford v. Sun Oil Co., 309 [319] U.S. 315 [63 S.Ct. 1098, 87 L.Ed. 1424] (1943).” It found that the state court action would afford the parties “timely and adequate state court review,” and that federal adjudication would “be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.”
Riley promptly filed a motion to reconsider, which the district court denied. In doing so, the district court reiterated that even if it had jurisdiction, it “must abstain from exercising jurisdiction,” this time citing Employers Resource Management Co. v. Shannon,. 65 F.3d 1126, 1134-35 (4th Cir.1995), a case based on the abstention doctrine of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The district court noted that “Virginia’s interest in adjudicating claims involving a state-registered trademark is both clear and compelling, and the state-court proceeding affords Plaintiff an adequate opportunity to present his claims.”
II.
Riley now appeals the district court’s dismissal order, claiming that the court abused its discretion in abstaining.
A.
The Supreme Court held in Brillhart v. Excess Ins. Co., 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942) and reaffirmed in Wilton v. Seven Falls Co., 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995) that when a plaintiff brings a declaratory judgment action, the district court enjoys discretion in deciding whether to assert jurisdiction over the action or abstain from hearing it. This discretion stems from the federal Declaratory Judgment Act, which expressly provides that district courts “may declare the rights and other legal relations of any interested party seeking a declaration.” 28 U.S.C. § 2201(a) (emphasis added). Given this “nonobligatory” language, the Supreme Court has explained that “[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.” Wilton, 515 U.S. at 288, 115 S.Ct. 2137.
Thus, even when a court has jurisdiction, it “is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment.” Id. This court has likewise recognized that “district courts have great latitude in determining whether to assert jurisdiction over declaratory judgment actions.” United Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 493 (4th Cir.1998) (citations and internal quotations omitted).
Although of course not unbounded, see Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., 386 F.3d 581, 594 (4th Cir. 2004), a district court’s discretion “is especially crucial when, as here, a parallel or related proceeding is pending in state court.” New Wellington Fin. Corp. v. Flagship Resort Develop. Corp., 416 F.3d 290, 297 (4th Cir.2005). In such cases, district courts have “wide discretion” to *402 decline jurisdiction. See Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 257 (4th Cir.1996).
The Supreme Court and this court have provided district courts with general guidelines to aid their exercise of discretion. Broadly speaking, when deciding whether or not to stay or dismiss a declaratory judgment action when there is a related proceeding underway in state court, a district court should determine whether the controversy “can better be settled in the proceeding pending in the state court.” Wilton v. Seven Falls Co., 515 U.S. 277, 282, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995) (citation and internal quotations omitted). This requires the district court to weigh principles of “federalism, efficiency, and comity that traditionally inform a federal court’s discretionary decision whether to abstain from exercising jurisdiction over state-law claims in the face of parallel litigation in the state courts.” Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371, 376 (4th Cir.1994). In making these determinations, a district court must strive to avoid “indulging in ‘[gratuitous interference,’ [by] per-mitt[ing] the federal declaratory judgment action to proceed.” Wilton, 515 U.S. at 283, 115 S.Ct. 2137 (citation omitted).
To further assist a district court in balancing the state and federal interests at stake in such a decision, this court has articulated four factors (the “Kapilojf factors”) for consideration. United Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 493-94 (4th Cir.1998) (citing Nautilus, 15 F.3d at 377), A district court should consider:
(1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of “overlapping issues of fact or law” might create unnecessary “entanglement” between the state and federal courts; and (4) whether the federal action is mere “procedural fencing,” in the sense that the action is merely the product of forum-shopping.
Kapiloff, 155 F.3d at 493-94.
B.
When a district court abstains from hearing a declaratory judgment action in favor of a parallel state court proceeding, we must be careful on appeal to apply the Kapiloff factors deferentially, “because facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are peculiarly within [the district court’s] grasp.” Wilton, 515 U.S. at 289, 115 S.Ct. 2137; see also S.C. Dep’t of Health & Envtl. Control v. Commerce & Indus. Ins. Co., 372 F.3d 245, 260 (4th Cir.2004).
In this case, we cannot say that the district court abused its discretion when it abstained from entertaining Riley’s request for declaratory relief and instead allowed the dispute to proceed in the related suit already underway in Virginia state court. The district court’s ruling was well within the discretion recognized by the Supreme Court in Brillhart and Wilton.[1]
It was likewise consistent with an application of the four Kapilojf factors to the facts of this case. First, Virginia “has a strong interest in having the issues decided in its courts.” See Kapiloff, 155 F.3d at 493-94. This case requires a determination of the liability of a Virginia resident and a Virginia law firm, involves intellectual property registered in Virginia, and demands an application of Virginia trademark law. Cf. New Wellington Fin. Corp. *403 v. Flagship Resort Develop. Corp., 416 F.3d 290, 297 (4th Cir.2005). Depending on how the legal claims unfold, the questions of state law at issue may well be “difficult, complex, or unsettled,” see Great Am. Ins. Co. v. Gross, 468 F.3d 199, 211 (4th Cir.2006), and a federal court “should not elbow its way into this controversy to render what may be an ‘uncertain and ephemeral’ interpretation of state law.” Mitcheson v. Harris, 955 F.2d 235, 238 (4th Cir.1992) (citation omitted). Indeed, as the district court in this case found, “Virginia’s interest in adjudicating claims involving a state-registered trademark is both clear and compelling,” and federal adjudication would “be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.”
Second, the Virginia state court could likely “resolve the issues more efficiently” than this court. See Kapiloff, 155 F.3d at 493-94. As a general rule, “the first suit should have priority, absent the showing of balance of convenience in favor of the second action.” Ellicott Mach. Corp. v. Modem Welding Co., 502 F.2d 178, 180 n. 2 (4th Cir.1974) (citation and internal quotations omitted). Here, the state suit was filed before the federal suit. The state proceeding is also further along than the federal action. This court’s intei’ference with the pending state court proceeding would therefore produce inefficiencies by needlessly duplicating efforts, generating piecemeal litigation, and expending limited judicial resources.
Third, the Virginia state court proceeding and this federal court proceeding involve “overlapping issues of fact [and] law,” see Kapiloff, 155 F.3d at 493-94, because both cases center on an identical core question: Does Riley’s website infringe on DIL’s trademark under Virginia trademark law? If the state court and this court were to simultaneously find facts related to alleged trademark infringement and make pronouncements on Virginia trademark law, the common issues involved here could easily result in an “unnecessary ‘entanglement’ ” between the two tribunals. See id.
Entanglement is all the more likely where, as here, common issues “are already being litigated by the same parties in the related stat court actionf ].” Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371, 379 (4th Cir.1994). In such cases, there is a real risk that the state court’s prior resolution of overlapping issues would entitle those issues to preclu-sive effect, thereby “frustrating] the orderly progress of the [] proceedings by leaving ... some parts of [the] case foreclosed from further examination but still other parts in need of full scale resolution.” Id. at 377 (citation and internal quotations omitted).
Fourth, the final Kapilojf factor weighs in favor of abstention insofar as Riley’s federal suit appears to be “mere ‘procedural fencing.’ ” See Kapiloff, 155 F.3d at 493-94. Procedural fencing occurs when, as in this case, “a party has raced to federal court in an effort to get certain issues that are already pending before the state courts resolved first in a more favorable forum.” Great Am. Ins. Co. v. Gross, 468 F.3d 199, 212 (4th Cir.2006). Here, DIL sued Riley in state court, but he did not want to be in state court. So Riley brought his own suit in federal court, requesting a declaration that he was not liable to DIL in state court. Such conduct is the sort of forum-shopping against which abstention seeks to guard.
Of course, a defendant is not powerless to influence the forum that will determine his liability, and in this case, Riley had the right to remove the state court action to federal court. However, removal is the appropriate avenue into federal court, and *404 a declaratory judgment action may not be used “to achievfe] a federal hearing in a case otherwise not removable.” Nautilus, 15 F.3d at 377 (citation and internal quotations omitted). That is precisely what happened here. The declaratory plaintiff did try — unsuccessfully—to remove the case, and the district court remanded the case back to state court. Because the federal removal statute forecloses Riley from appealing the district court’s remand order, see 28 U.S.C. § 1447(d), he is now attempting to get into federal court through a side entrance, by contesting and appealing the district court’s dismissal of his declaratory judgment action. This attempted end-run around the removal statutes is strong evidence of “procedural fencing” and further weighs in favor of abstention.[2]
C.
With all respect to our fine colleague in this case, we cannot endorse the dissent’s approach or accept the effects that would flow from it. First, the dissent’s view would lead to sprawling litigation in multiple forums and contravene the Declaratory Judgment Act. The dissent does not even believe Riley was sued in state court for a violation of the Lanham Act. But it nonetheless believes that this court should reverse the trial court’s discretionary dismissal and essentially require the district court to declare Riley’s rights under that statute.
Such a claim is troublesome. As the Supreme Court has only recently held in MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 136, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007), a district court’s jurisdiction under the Declaratory Judgment Act is unquestionably discretionary. In case there were any doubt about the continuing vitality of Wilton and Bnllhart, the Supreme Court has put that doubt to rest, reiterating what we ourselves have emphasized: that the Declaratory Judgment Act “confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.” Id. (citations and internal quotations omitted). Moreover, the Court noted that district courts play a critical role in this regard, emphasizing, yet again, that the act “vest[s] district courts with discretion in the first instance, because facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are peculiarly within their grasp.” Id. (citation and internal citations omitted).
The dissent in fact declines to allow district courts to do what the Supreme Court has said they are uniquely positioned to do: evaluate “the equitable, prudential, and policy arguments in favor of such a discretionary dismissal.” Id. The Supreme Court made these statements, no less, in a declaratory judgment action concerning intellectual property rights. See id. at 120, 127 S.Ct. 764. By clearing the way for litigants to subvert pending state court proceedings by doing little more than positing a federal law under which they would like to be declared non-liable, we risk “turning] into the federal courts a vast current of litigation.” See Shelly Oil Co. v. Phillips Petroleum Co., 339 U.S. *405 667, 673, 70 S.Ct. 876, 94 L.Ed. 1194 (1950).
The proper route into federal court is under the removal statutes — not by a collateral attack on state proceedings under the Declaratory Judgment Act. When a federal court has subject matter jurisdiction over a suit brought in state court, a state court defendant may remove the case, guided by the comprehensive scheme Congress set out in the removal statutes. When, however, a state court defendant bypasses the removal mechanism and instead uses the Declaratory Judgment Act as his ticket into federal court, a district court is entitled to take that very fact into account in deciding whether or not to abstain.
We cannot agree with our colleague that the existence of federal jurisdiction somehow nullifies or diminishes a district court’s discretion in a declaratory action to abstain. To the contrary, the question of jurisdiction is analytically distinct from that of abstention, and indeed, is always a prerequisite to an abstention analysis. Thus, even in cases involving federal law, “[t]he Declaratory Judgment Act [i]s an authorization, not a command. It g[ives] the federal courts competence to make a declaration of rights; it d[oes] not impose a duty to do so.” Pub. Affairs Assocs., Inc. v. Rickover, 369 U.S. 111, 112, 82 S.Ct. 580, 7 L.Ed.2d 604 (1962). Whether or not appellant is correct to suggest that the district court in this case would not have been prohibited from asserting jurisdiction, we cannot conclude that the trial court’s discretion was so constrained in these circumstances that it was required to exercise jurisdiction.[3]
As a final matter, we cannot subscribe to our good colleague’s conception of the proper relationship between state and federal courts. Whatever discretion a district court has to abstain in a declaratory judgment action, that discretion can only be enhanced when there is a related proceeding pending in state court. See New Wellington Fin. Coip. v. Flagship Resort Develop. Corp., 416 F.3d 290, 297 (4th Cir.2005); Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 257 (4th Cir.1996). The mere presence of a federal question in a declaratory suit does not somehow extinguish Virginia’s interest in deciding a matter that was first filed in the state system. Such a view would be damaging to state courts, which, of course, are perfectly competent to decide issues of federal law. As the Eighth and Eleventh Circuits have noted, state courts have concurrent jurisdiction under the Lanham Act, see Alpharma, Inc. v. Pennfield Oil Co., 411 F.3d 934, 938 (8th Cir.2005); Aquatherm Indus., Inc. v. Fla. Power & Light Co., 84 F.3d 1388, 1394 (11th Cir.1996), and, indeed, there are literally hundreds of state court cases adjudicating Lanham Act claims. Thus, Riley’s request for a declaration of non-liability under federal law, made alongside a request for a declaration of non-liability under Virginia law, does not render Wilton and Kapiloff inapplicable: Virginia contin *406 ues to have a strong interest in resolving the state law issues; the Virginia court’s head-start still gives it an efficiency advantage; overlapping issues continue to present a likelihood of “entanglement”; and evidence of “procedural fencing” remains.
Rather than vest the district court with the discretion to which it is entitled, the dissent would offer, as a consolation prize, the opportunity for it to exercise its discretion whether to stay proceedings in this case pending the resolution of the state action under Front Royal & Warren County Indus. Park Corp. v. Town of Front Royal, 945 F.2d 760 (4th Cir.1991). Front Royal, however, is inapplicable here. It did not address a district court’s authority to dismiss a case either in the context of a declaratory judgment action or in the context of state court proceedings already initiated and underway. Id. at 765.
III.
We hold only that the district court had discretion to abstain here and did not in these circumstances abuse its discretion in doing so. A peremptory reversal of the district court on these facts would entail serious risks, which we think it inadvisable to incur. Among other things, such a reversal would rob Brillhart and Wilton of any meaningful effect; encourage collateral attacks upon state court proceedings under the Declaratory Judgment Act, even where the state proceedings presented only questions of state law; circumvent the removal statutes; undermine the purpose of federal non-appealability provisions with respect to remands; encourage gamesmanship by litigants in multiple forums, preliminary to any merits resolution of their cases; and deny district courts the ability to assess the variable facts and circumstances that arise in these cases and that guide the sound exercise of trial court discretion. For all of the foregoing reasons, the judgment of the district court is hereby

AFFIRMED.

. The fact that the district court varied in its abstention rationales is of no moment, because its ultimate decision was a sound one which we may affirm on alternate grounds. See Skipper v. French, 130 F.3d 603, 610 (4th Cir.1997).

. Riley contends that the discretionary standard of Brillhart/Wilton is inapplicable to his requests for an injunction and for monetary damages. However, the perfunctory inclusion of nondeclaratory requests for relief does not suffice to remove a plaintiff from the ambit of the Brillhart/Wilton rule. A declaratory judgment plaintiff may not convert a district court’s discretionary jurisdiction under Brillhart/Wilton into nearly mandatory jurisdiction under Colorado River Water Conservation District v. United States, 424 U.S. 800, 813, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), simply by tossing in dependent or boilerplate nondeclaratory requests.

. The circuit court cases cited by the dissent are relevant only to the separate issue of jurisdiction and not to the issue of abstention. In fact, two of those cases found that the district court was entitled to exercise its discretion to dismiss the declaratory judgment action. See Surefoot, LC v. Sure Foot Corp., 531 F.3d 1236, 1248 (10th Cir.2008); McGraw-Edison Co. v. Preformed Line Prods. Co., 362 F.2d 339, 344-45 (9th Cir.1966). And in other cases, the courts disallowed discretionary dismissal under very different circumstances. See Rhoades v. Avon Prods., Inc., 504 F.3d 1151, 1162, 1165 n. 14 (9th Cir.2007) (reversing dismissal order made on primary jurisdiction grounds); PHC, Inc. v. Pioneer Healthcare, Inc., 75 F.3d 75, 81 (1st Cir.1996) (reversing dismissal order made on primary jurisdiction grounds as to Count I but allowing discretionary dismissal as to Count II).