**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-2330**

E. L., by and through her parents, Gina Lorsson and Devin
Lorsson,

Plaintiff – Appellant,

v.

CHAPEL HILL–CARRBORO BOARD OF EDUCATION,

Defendant – Appellee.

-----------------------------

NORTH CAROLINA SCHOOL BOARDS ASSOCIATION,

Amicus Supporting Appellee.

Appeal from the United States District Court for the Middle
District of North Carolina, at Greensboro.  Thomas D. Schroeder,
District Judge.  (1:12-cv-00029-TDS-JEP)

Argued:  September 16, 2014          Decided:  December 3, 2014

Before DUNCAN, AGEE, and DIAZ, Circuit Judges.

Affirmed by published opinion.  Judge Diaz wrote the opinion, in
which Judge Duncan and Judge Agee joined.

**ARGUED**: Robert Christopher Ekstrand, EKSTRAND & EKSTRAND LLP,
Durham, North Carolina, for Appellant.  Kenneth Alexander Soo,
THARRINGTON SMITH LLP, Raleigh, North Carolina, for Appellee.
**ON BRIEF**: Stefanie A. Smith, EKSTRAND & EKSTRAND LLP, Durham,

North Carolina, for Appellant.  Colin A. Shive, THARRINGTON SMITH LLP, Raleigh, North Carolina, for Appellee.  Allison B. Schafer, Christine T. Scheef, NORTH CAROLINA SCHOOL BOARDS ASSOCIATION, Raleigh, North Carolina, for Amicus Supporting Appellee.

———————

DIAZ, Circuit Judge:

E.L. is a nine-year-old girl with autism. This appeal arises out of her parents' dissatisfaction with the special education services provided to her by the Chapel Hill-Carrboro Board of Education ("the school board"), and their administrative complaint under the Individuals with Disabilities Education Act (the "IDEA"), 20 U.S.C. § 1400 et seq.. An administrative law judge determined that the school board violated the IDEA by failing to provide E.L. required speech therapy; however, in all other respects, the ALJ found her special education program appropriate. On the school board's appeal, a state review officer reversed the ALJ's conclusion regarding E.L.'s speech therapy, determining that the school board did not violate the IDEA.

In her civil action seeking judicial review of the administrative proceeding, E.L. for the first time appealed the ALJ's conclusion that, except for its failure to provide required speech therapy for parts of the 2008–09 and 2009-10 school years, the school board did not violate the IDEA. Despite failing to contest the ALJ's adverse decision before the state review officer, E.L. contends that she properly exhausted her administrative remedies under the IDEA. We conclude that E.L. did not exhaust her administrative remedies and that the

3

school board did not violate the IDEA.  We therefore affirm the district court's judgment.

I.

E.L. suffers from autism, which is compounded by complex motor and speech disabilities, resulting in global developmental delays.  These significant disabilities led her parents to seek early childhood intervention services from the school board. The school board provided E.L. with an individualized education program when she turned three years old, which placed her in the partial-day preschool program at the University of North Carolina's Frank Porter Graham Child Development Institute (the "Institute").

E.L.'s individualized education program for the 2008–09 school year afforded her a range of services, including speech, physical, and occupational therapy, all of which E.L. received onsite at the Institute.  E.L.'s 2009–10 program included a split placement, with E.L. attending the Institute for two partial days per week and The Mariposa School[1] for three partial days per week.  In March 2010, E.L.'s parents withdrew her from

---

[1] Mariposa is a private school for children with autism.  It uses applied behavior analysis methods, including positive, repetitive reinforcement of specific individual skills and goals, to work one-on-one with each child.

4

the Institute entirely and enrolled her at Mariposa for all five days.

Shortly thereafter, E.L., by and through her parents, filed a petition in the North Carolina Office of Administrative Hearings, alleging that the school board failed to provide E.L. with the free appropriate public education required by the IDEA. After a fourteen-day hearing, the parties submitted proposed findings of fact and conclusions of law to the administrative law judge. In his "Final Decision," the ALJ sided with the school board, with one exception. Specifically, the ALJ concluded that during April and May 2009 and September through December 2009, the school board did not provide E.L. the speech therapy required by her individualized education program. Consequently, the ALJ ordered the school board to reimburse E.L.'s parents for sixty hours of speech therapy and related transportation expenses.

The school board appealed the ALJ's decision to the North Carolina State Board of Education, which appointed a state-level review officer to hear the appeal. E.L. did not appeal the ALJ's decision. The review officer reversed, concluding that the school board had indeed provided E.L. with the required therapy.

E.L. subsequently filed the underlying civil action, seeking review of the administrative decision. E.L. claimed, as

5

she had before the ALJ, that the school board deprived her of a free appropriate public education during the 2008–09, 2009–10, and 2010–11 school years by not providing her with direct, intensive, one-on-one instruction that used applied behavior analysis methodology, as requested by her parents. On cross-motions for summary judgment, the district court dismissed E.L.'s claims, holding that because she did not raise them before the state review officer, she failed to exhaust her administrative remedies. As a result, whether the school board provided E.L. with appropriate speech therapy remained the only merits issue before the court. The court affirmed the review officer's decision as to that issue, concluding that the school board provided E.L. appropriate speech therapy.

II.

A.

The IDEA requires states receiving federal education funds to provide a "free appropriate public education" to all children with disabilities. 20 U.S.C. § 1400(d)(1)(A) (2012). As part of its procedural safeguards, the IDEA also requires states to hold a due process hearing whenever a parent lodges a complaint regarding services provided to his or her child. 20 U.S.C. § 1415(f). States may choose to conduct these hearings through either the state educational agency or the local agency

6

"responsible for the education of the child." Id. § 1415(f)(1)(A); 34 C.F.R. § 300.511(b) (2014). Where the local educational agency conducts the initial hearing, the IDEA provides a right of review to the state agency. 20 U.S.C. § 1415(g).

In North Carolina, ALJs conduct the due process hearings required by the IDEA. The North Carolina Office of Administrative Hearings ("OAH") appoints these ALJs through a memorandum of agreement with the State Board. N.C. Gen. Stat. § 115C-109.6(a), (j) (2013). North Carolina further provides for review by a State Board-appointed review officer. Id. § 115C-109.9(a).

A party aggrieved by the decision of the state agency may bring a civil action in state or federal court. 20 U.S.C. § 1415(i)(2). We have consistently held that a plaintiff must exhaust her administrative remedies before bringing such an action. See, e.g., MM ex rel. DM v. School Dist., 303 F.3d 523, 536 (4th Cir. 2002); Scruggs v. Campbell, 630 F.2d 237, 239 (4th Cir. 1980) (construing the IDEA's materially similar predecessor statute). Whether a plaintiff has properly exhausted all administrative remedies is a pure question of law that we review de novo. See Talbot v. Lucy Corr Nursing Home, 118 F.3d 215, 218 (4th Cir. 1997).

7

B.

E.L. contends that our exhaustion requirement should not preclude her from challenging the review officer's decision. She offers three arguments in support of this contention: (1) the IDEA does not require her to seek state-level review in order to exhaust her administrative remedies, (2) she did, nonetheless, seek state-level review, and (3) even if she did not, exceptions to the exhaustion requirement apply. We address each argument in turn.

1.

E.L. primarily argues that the IDEA does not authorize an appeal to the state educational agency where, as here, the local educational agency did not conduct the hearing.[2] Consequently, E.L. asserts that she was not required to appeal the ALJ's

---

[2] The school board contends that the initial hearing should be considered "local" for the purposes of the IDEA, primarily because the relevant statute requires that the hearing "be conducted in the county where the child attends school or is entitled to enroll . . . ." N.C. Gen. Stat. § 115-109.6(d). We find this argument somewhat curious, given that the hearing took place not in the county where E.L. attends school, but instead at the OAH offices in Raleigh, North Carolina, albeit at the request of the parties. More importantly, local school boards in North Carolina have no role in choosing the hearing officer; rather, an aggrieved party must file her petition directly with the OAH, which conducts due process hearings under a memorandum of agreement with the State Board. N.C. Gen. Stat. § 115-109.6(a), (j). In light of this, we are satisfied that North Carolina's statutory scheme does not provide for a "local" hearing, as that term is defined by the IDEA.

8

adverse decision to the State Board prior to filing suit in the district court. We reject E.L.'s interpretation of the statute.

Whether the IDEA allows states to implement a two-tiered review process, when both tiers are administered at the state level, is an issue of first impression in this circuit. Only a handful of federal courts have considered IDEA challenges to this procedure, and the majority have found no fault in it. See, e.g., O.M. ex rel. McWhirter v. Orange Cnty. Bd. of Educ., No. 1:09CV692, 2013 WL 664900, at *11 (M.D.N.C. Feb. 22, 2013) (concluding that the IDEA does not prohibit states "which choose to conduct the administrative process solely at the state level from dividing that state-level process into two steps"); L.B. ex rel. Benjamin v. Greater Clark Cnty. Schs., 458 F. Supp. 2d 845, 854 (S.D. Ind. 2006) ("It does not violate the IDEA for a state to adopt a two-tiered administrative-review process, both tiers of which are conducted by the state educational agency."). But see Township High Sch. Dist. No. 211 Cook Cnty. v. Ms. V., No. 93 C 7492, 94 C 30, 1995 WL 103667, at *3 (N.D. Ill. Mar. 3, 1995) (concluding that two levels of state hearings are permissible under the IDEA only so long as the second level is "not mandatory and does not unduly delay the parties['] right to seek court review of the final administrative decision").

The IDEA's exhaustion requirement serves the important purpose of allowing states to use their special expertise to

resolve educational disputes. See Bd. of Educ. of Henrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 208 (1982) (emphasizing that courts lack the expertise to resolve questions of educational policy). As the district court noted, the IDEA's hearing provisions contemplate that "a state educational agency conduct the administrative review immediately preceding any civil action." E.L. ex rel. G.L. v. Chapel Hill-Carrboro Bd. of Educ., 975 F. Supp. 2d 528, 532 (M.D.N.C. 2013) (emphasis added). The Supreme Court has also concluded as much. See Winkleman v. Parma City Sch. Dist., 550 U.S. 516, 526 (2007) ("Once the state educational agency has reached its decision, an aggrieved party may commence suit in federal court.").

To uphold North Carolina's scheme for implementing the review provisions of the IDEA is simply to recognize the state's primary role in setting educational policy and resolving disputes under the statute. And while it is conceivable that a state statute requiring numerous and onerous levels of administrative review could offend the IDEA, North Carolina's measured decision to add an additional level of review before the State Board of Education only enhances procedural protections for disabled students.

E.L. points to an advisory opinion by the U.S. Department of Education as proof that North Carolina's scheme violates the IDEA. We disagree. There, the Department of Education

10

concluded that because hearings conducted under Florida's one-tier structure were not conducted by the local educational agency but rather by a hearing officer from the Division of Administrative Hearings, the IDEA did not require a separate right of review by the state educational agency. Letter from Stephanie Smith Lee, Director, Office of Special Ed. Programs, U.S. Dep't of Educ. (Dec. 10, 2003), available at http://www2.ed.gov/policy/speced/guid/idea/letters/2003-4/redact121003dueprocess4q2003.pdf (saved as ECF opinion attachment).

The advisory opinion thus stands for two unremarkable propositions: (1) a state educational agency may assign the responsibility to conduct hearings to another entity (as both North Carolina and Florida have done) and (2) in such a circumstance, the IDEA does not require an additional level of review. Nowhere does the letter state (as E.L. asserts) that the IDEA prohibits a state from offering an additional layer of review.

2.

E.L. offers two alternative reasons why the district court should not have dismissed her claims for failure to exhaust: first, that she did in fact appeal the ALJ's decision to the review officer, as evidenced by the fact that the review officer addressed some of her claims on the merits, and second, that she

11

should be excepted from any exhaustion requirement. We find neither argument persuasive.

North Carolina law provides that any party "aggrieved by the findings and decision of a hearing officer" in an IDEA case may seek review by filing a written notice of appeal with the North Carolina Department of Public Instruction, Exceptional Children Division. See N.C. Gen. Stat. § 115C-109.9(a). This E.L. chose not to do, a fact she does not dispute. Instead, E.L. submitted a "Response to the State Board of Education's Request for Written Arguments," which outlined her contention that the IDEA does not authorize North Carolina's administrative appeal. E.L. also submitted a copy of her "Proposed Final Decision" filed with the ALJ following the conclusion of the hearing.

E.L. contends that these "over 100 pages of written argument seeking reversal of the ALJ's erroneous findings" constitute an appeal. Appellant's Br. at 35. That is not correct. Nothing in these documents identified the "findings and decisions" by which E.L. was aggrieved and on which she sought review. Indeed, E.L.'s filings expressly disavowed her ability to appeal the ALJ's decision.

E.L.'s separate assertion that the review officer considered and rejected her "contentions of error" on the merits is plainly wrong. It is true that the review officer identified

12

all the issues that the parties raised before the ALJ. But the review officer also noted that E.L. chose not to appeal a decision "that was very unfavorable to [her] on most issues." J.A. at 3561. Consequently, the review officer focused almost exclusively on that portion of the ALJ's decision appealed by the school board. To the extent that the review officer took note of factual findings and conclusions of law not related to the school board's appeal, he did so only to give context to his decision to reverse the ALJ. J.A. at 3562, 3575.

Finally, the review officer's cursory alternative finding of "no significant error" in the ALJ's decisions unfavorable to E.L. did not satisfy E.L.'s obligation to exhaust her administrative remedies. As the district court properly noted, the review officer had jurisdiction to review only those findings and decisions appealed. See N.C. Gen. Stat. § 115C-109.9; E.L., 975 F. Supp. 2d at 535, n.8. Because E.L. failed to properly take an appeal, there was nothing for the review officer to consider as to E.L's claims.

Nor do any exceptions to exhaustion apply. See MM, 303 F.3d at 536 (recognizing three "narrow" exceptions to the exhaustion requirement: (1) where the administrative process would be futile, (2) when the parents do not receive proper notice of their administrative rights, or (3) when exhaustion

would be harmful to a disabled child).[3]  Appeal here would not have been futile because the review officer clearly could have granted E.L. relief, had she availed herself of the opportunity of appeal.  We also reject E.L's frivolous contention that she lacked proper notice of her right to appeal.  Although the ALJ concluded (incorrectly) that E.L. had no further state-level appeal rights, E.L. effectively invited the error by asserting as much in the proposed "Final Decision" that she submitted to the ALJ.  See United States v. Jackson, 124 F.3d 607, 617 (4th Cir. 1997) ("[A] court cannot be asked by counsel to take a step in a case and later be convicted of error, because it has complied with such request." (internal quotation marks omitted)); see also Johnson v. I.N.S., 971 F.2d 340, 343–44 (9th Cir. 1992) (applying invited error doctrine in the context of administrative review proceedings).

C.

1.

Because we conclude that E.L. failed to exhaust her administrative remedies as to her claims, the sole issue remaining before us is whether the school board provided appropriate speech therapy to E.L. during the 2008-09 and 2009-

---

[3] E.L. makes no claim as to this third exception.

14

10 school years. On that question, the district court granted summary judgment to the school board.

Although a district court's review of IDEA administrative proceedings is typically conducted on motions for summary judgment, this is a procedural misnomer. More precisely, the IDEA requires that a reviewing court (1) receive the record of the administrative proceeding, (2) hear additional evidence at the request of a party, and (3) base its decision <u>on the preponderance of the evidence</u>. 20 U.S.C. § 1415(i)(2)(C) (emphasis added). Under this standard, the district court must conduct an independent, de novo review, albeit one generally cabined by the record of the administrative proceedings.[4] <u>See Rowley</u>, 458 U.S. at 205; <u>Burke Cnty. Bd. of Educ. v. Denton ex rel. Denton</u>, 895 F.2d 973, 981 (4th Cir. 1990).

In this posture, the district court must give "due weight" to the administrative proceedings, <u>Rowley</u>, 458 U.S. at 206, bearing in mind that a hearing officer's findings of fact are entitled to "be considered prima facie correct." <u>J.P. ex rel. Peterson v. Cnty. Sch. Bd.</u>, 516 F.3d 254, 259 (4th Cir. 2008)

---

[4] Where the district court receives additional evidence under the statute, the court acts as an independent fact-finder, "essentially conducting a bench trial." <u>MM</u>, 303 F.3d at 531 n.12. Because the parties here did not present additional evidence to the district court, this broader standard of review is not implicated.

(citing Doyle v. Arlington Cnty. Sch. Bd., 953 F.2d 100, 105 (4th Cir. 1991)).  In a two-tiered system, such as North Carolina's, a review officer's decision is also entitled to deference unless it departs from the "normal process of fact-finding."  G ex rel. RG v. Fort Bragg Dependent Sch., 343 F.3d 295, 303 (4th Cir. 2003).

"In conducting our review in an IDEA proceeding, we [too] must examine the entire record, and we must afford 'due weight' to the administrative determinations, applying the standard of review utilized by the district court."  MM, 303 F.3d at 531.

2.

A free appropriate public education must confer "some educational benefit" on the disabled child receiving services. Rowley, 458 U.S. at 200.  Such an education, however, need not "maximize each child's potential"; the IDEA is concerned with equality of access rather than equality of outcome.  See Rowley, 458 U.S. at 198-99 ("[T]o require . . . the furnishing of every special service necessary to maximize each handicapped child's potential is . . . further than Congress intended to go.").  To that end, an individualized education program formulated under the IDEA is sufficient if it is "reasonably calculated to enable the child to receive educational benefits."  Peterson, 516 F.3d at 257 (citing Rowley, 458 U.S. at 207).

16

We afford great deference to the judgment of education professionals in implementing the IDEA. As long as an individualized education program provides the basic floor of opportunity for a special needs child, a court should not attempt to resolve disagreements over methodology. See Rowley, 458 U.S. at 208; see also Hartmann ex rel. Hartmann v. Loudoun Cnty. Bd. of Educ., 118 F.3d 996, 999 (4th Cir. 1997) ("[T]he IDEA does not grant federal courts a license to substitute their own notions of sound educational policy for those of local school authorities . . . ."); Tice ex rel. Tice v. Botetourt Cnty. Sch. Bd., 908 F.2d 1200, 1207 (4th Cir. 1990) ("Neither the district court nor this court should disturb an [individualized education program] simply because we disagree with its content.").

The dispute here centers not on whether E.L.'s individualized education programs themselves were appropriate, but whether the speech therapy required by those programs was in fact provided during April and May 2009 and September through December 2009. The record supports the finding that the speech therapy was provided.

E.L.'s individualized education program for the 2008–09 school year required her to receive forty-five sessions of speech therapy per nine-week grading period, or one session per day, five days a week. It further required that these services

17

be provided in the "total school environment," as part of the "embedded, inclusive model" of instruction the Institute used regarding therapies.  This model, where therapists work with students directly within their normal classroom and concurrently with other instruction, differs from alternative models, where students are "pulled" from the classroom to go to the therapist's office, or "reverse-pulled," where students remain behind in the classroom with the therapist while the rest of the class leaves for another activity (e.g., recess).

The ALJ apparently based his conclusion that E.L. did not receive appropriate speech therapy during April and May 2009 on several factors: (1) the Institute's speech therapist at the time, Kathy Davis, provided services in a "group" setting, (2) Davis supervised speech therapy interns, who assisted in providing therapy and writing progress notes, and (3) Davis shredded her personal therapy notes when she left the Institute in July 2009.

None of these factors demonstrates that E.L. did not receive appropriate therapy.  First, E.L.'s individualized education program never called for isolated, one-to-one instruction; rather, it explicitly stated that therapy would be provided in an embedded, inclusive model.  Second, although interns assisted with the therapy, they were supervised by Davis, who was present during most of the therapy sessions.  We

18

note that interns also participated in therapy sessions in June and July 2009, but the ALJ did not find that speech therapy provided during those months was inappropriate. Third, the fact that Davis shredded her personal notes (as she testified she did with all her notes at the end of every school year) has little bearing on whether E.L. received appropriate therapy.[5]

For the 2009–10 school year, E.L.'s parents enrolled her at the Mariposa School three days per week, and she continued to attend the Institute during the other two school days. E.L.'s individualized education program required that she receive four hours of speech therapy per month, in approximately half-hour sessions, or one session each day she was at the Institute. From September 2009 until March 2010, when her parents withdrew her from the Institute, E.L. received therapy from three different providers, each of whom conducted therapy sessions in the "total school environment," as prescribed by the program.

The ALJ's conclusion that E.L. did not receive appropriate speech therapy between September and December 2009 appears to be based on the view of one of those providers (Ms. Melissa Felicelli), who believed that E.L. needed attention outside the

---

[5] E.L. also contends that she did not receive the required hours or sessions of speech therapy. However, the unrebutted testimony of the Institute's therapists was that they provided speech therapy to E.L. daily while in the classroom.

embedded classroom setting. Felicelli's attempts to "reverse-pull" E.L. from the classroom created a conflict with Institute teachers and administrators (who felt this was contrary to Institute teaching methodology) and eventually led to her resignation in October 2009. There is no dispute, however, that Felicelli provided E.L. with the speech therapy prescribed by E.L.'s individualized education program. Her methodological disagreement with Institute staff is, as the review officer noted, immaterial to whether E.L. received appropriate services.

In sum, the review officer's conclusion that E.L. received the speech therapy mandated by her individualized education program is supported by the evidence. We therefore affirm the district court's determination that E.L. received a free appropriate public education.

AFFIRMED

20