**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 23-1854**

---

D.C., by his parents and guardians, Trevor Chaplick and Vivian Chaplick; TREVOR CHAPLICK; VIVIAN CHAPLICK; HEAR OUR VOICES, INC., on behalf of themselves and all others similarly situated; JAMES BINGHAM; M.B., by his parents and guardians, James Bingham and Sheila Bingham; SHEILA BINGHAM,

        Plaintiffs – Appellants,

     v.

FAIRFAX COUNTY SCHOOL BOARD; VIRGINIA DEPARTMENT OF EDUCATION; DR. MICHELLE REID, Superintendent of Fairfax County Public Schools, in her official capacity; LISA COONS,

        Defendants – Appellees.

---

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Michael Stefan Nachmanoff, District Judge. (1:22-cv-01070-MSN-IDD)

---

Argued: May 9, 2024                     Decided: March 19, 2026

---

Before KING, GREGORY, and RUSHING, Circuit Judges.

---

Affirmed by published opinion. Judge Rushing wrote the opinion, in which Judge King joined. Judge Gregory wrote a dissenting opinion.

---

**ARGUED:** William Randolph Merrill, SUSMAN GODFREY LLP, Houston, Texas, for Appellants. Brian David Schmalzbach, MCGUIREWOODS LLP, Richmond, Virginia; Julia Bougie Judkins, FAIRFAX COUNTY PUBLIC SCHOOLS, Falls Church, Virginia,

for Appellees.  **ON BRIEF:**  Alan M. Grimaldi, Oral D. Pottinger, Eric A. White, MAYER BROWN LLP, Washington, D.C.; Aderson Francois, Civil Rights Law Clinic, GEORGETOWN LAW, Washington, D.C.; Michael Adamson, SUSMAN GODFREY LLP, Houston, Texas; Craig T. Merritt, R. Braxton, MERRITTHILL, PLLC, Richmond, Virginia, for Appellants.  Jeanne-Marie Burke, FAIRFAX COUNTY PUBLIC SCHOOLS, Falls Church, Virginia, for Appellees Fairfax County School Board and Dr. Michelle Reid. Jason S. Miyares, Attorney General, Andrew N. Ferguson, Solicitor General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia; Jackie Lynn White, II, Tysons, Virginia, Farnaz Farkish Thompson, MCGUIREWOODS LLP, Washington, D.C., for Appellees Virginia Department of Education and Lisa Coons.

———————

RUSHING, Circuit Judge:

Two students, their parents, and a nonprofit organization sued the Virginia Department of Education and the Fairfax County School Board, alleging those entities systemically violated the Individuals with Disabilities Education Act (IDEA), 84 Stat. 175, as amended, 20 U.S.C. § 1400 *et seq*. The district court dismissed their complaint after finding that one student and his parents failed to exhaust their administrative remedies, the other student and his parents had a duplicative suit pending, and the nonprofit organization lacked standing to sue. We affirm.

## I.

The IDEA offers States federal funds to assist in educating children with certain disabilities. 20 U.S.C. § 1412; *see also id.* § 1401(3)(A)(i). In exchange for those funds, a State commits to provide a "[f]ree appropriate public education" (FAPE) to eligible children. *Id.* § 1412(a)(1). A FAPE consists of "'special education and related services' . . . tailored to meet a child's 'unique needs.'" *Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154, 158 (2017) (quoting 20 U.S.C. § 1401(9), (26), (29)). The primary mechanism for providing a FAPE to each child is an "individualized education program" (IEP). 20 U.S.C. §§ 1412(a)(4), 1414(d). An IEP is a comprehensive document prepared by teachers, school officials, and parents that "spells out a personalized plan to meet all of the child's 'educational needs.'" *Fry*, 580 U.S. at 158 (quoting 20 U.S.C. § 1414(d)(1)(A), (B)).

Although the IDEA envisions a cooperative process between parents and educators, the statute anticipates that they "will not always agree." *Bouabid v. Charlotte-Mecklenburg Schs. Bd. of Educ.*, 62 F.4th 851, 856 (4th Cir. 2023); *see Schaffer ex rel.*

3

*Schaffer v. Weast*, 546 U.S. 49, 53 (2005). Parents who oppose the content of their child's IEP may exercise several procedural rights, such as requesting an independent educational evaluation and pursuing informal dispute resolution procedures. *See Bouabid*, 62 F.4th at 856; *see* 20 U.S.C. § 1415(b)(1), (e). If disagreements remain, parents may seek a due process hearing in the appropriate state administrative forum. 20 U.S.C. § 1415(f). "There, an impartial hearing officer determines 'whether the child received a free appropriate public education' and orders appropriate relief as necessary." *Sanchez v. Arlington Cnty. Sch. Bd.*, 58 F.4th 130, 133 (4th Cir. 2023) (quoting 20 U.S.C. § 1415(f)(3)(E)(i)). Any party aggrieved by the hearing officer's determination can then file a civil suit in state or federal court. 20 U.S.C. § 1415(i)(2)(A). The court may receive additional evidence and "grant such relief as [it] determines is appropriate." *Id.* § 1415(i)(2)(C); *see Sch. Comm. of Burlington v. Dep't of Educ. of Mass.*, 471 U.S. 359, 369–370 (1985).

Plaintiffs are two Fairfax County students who qualify for special education, their parents, and an advocacy organization. Student D.C. has received special education services from Fairfax County Public Schools (FCPS) since 2008. His parents, the Chaplicks, requested a due process hearing in 2015 to challenge FCPS's refusal to pay for D.C. to be educated in a private residential facility. The hearing officer ruled that D.C.'s public school placement constituted a FAPE. After the hearing, however, FCPS agreed to provide financial support for D.C. to attend the day program at a private institution rather than receive his education in a public-school setting. Eventually, the Chaplicks moved D.C. into a residential placement at a different facility. FCPS declined to pay for that residential facility or conduct a new IEP meeting but agreed to pay for D.C. to attend the

4

day program at his previous institution.  The Chaplicks did not pursue a due process hearing to challenge that decision.

Student M.B. has received special education services from FCPS since 2013.  In 2021, his parents, the Binghams, placed M.B. at a private day school.  The Binghams then requested a due process hearing to challenge M.B.'s IEP, which provided for his education in a public school and denied funding for private school.  The hearing officer agreed with FCPS that a public-school setting constituted a FAPE for M.B.  M.B. and the Binghams sued in federal district court to contest the hearing officer's determination, and that suit remained pending when the present lawsuit was filed.

The final Plaintiff is Hear Our Voices, Inc. (HOV).  HOV is a "private, non-profit member organization" established "to protect and advocate for the rights of persons with disabilities and to safeguard the rights of individuals with developmental disabilities." J.A. 25.  "HOV's members include" the Chaplicks, the Binghams, and "other residents of Virginia and Fairfax County." J.A. 25.

Plaintiffs filed their first amended complaint in this purported class action in 2023. They alleged that the Fairfax County School Board, the Virginia Department of Education, and their respective superintendents systemically violated the IDEA, depriving D.C., M.B., and similarly situated students of a FAPE.  In six counts, the complaint alleged that Defendants failed to provide a FAPE; violated the IDEA by not providing "appropriate procedural safeguards" including "a fair and impartial due process hearing before a qualified and impartial hearing officer," J.A. 111–113; and deprived Plaintiffs of due process and equal protection of the laws by interfering with "their property and liberty

5

interest in [a] FAPE, their property interest in an adequate IEP, and their liberty interest in an Impartial Due Process Hearing," J.A. 108.

Defendants moved to dismiss the complaint, and after a hearing the district court granted the motion. The court reasoned that D.C. and the Chaplicks could not pursue this lawsuit because they had failed to exhaust the IDEA's administrative remedies before filing suit; M.B. and the Binghams must be dismissed from the case because they had previously filed a separate federal lawsuit raising duplicative claims that remained pending before a different judge; and HOV lacked standing to sue on behalf of itself or its identified members. Plaintiffs appealed all three rulings.

## II.

We begin with the Chaplicks and administrative exhaustion. "Whether a plaintiff has properly exhausted all administrative remedies is a pure question of law that we review de novo." *E.L. ex rel. Lorsson v. Chapel Hill-Carrboro Bd. of Educ.*, 773 F.3d 509, 514 (4th Cir. 2014).

"'[W]e have consistently held that a plaintiff must exhaust her administrative remedies before bringing . . . an action'" under the IDEA's judicial review provision. *K.I. v. Durham Pub. Schs. Bd. of Educ.*, 54 F.4th 779, 788 (4th Cir. 2022) (quoting *E.L.*, 773 F.3d at 513–514); *see* 20 U.S.C. § 1415(i)(2)(A), (B). The statute also requires a plaintiff to "exhaust[]" the IDEA's administrative processes "before . . . filing . . . a civil action under [other] laws seeking relief that is also available under [the IDEA]." 20 U.S.C. § 1415(*l*); *see Luna Perez v. Sturgis Pub. Schs.*, 143 S. Ct. 859, 863 (2023). If a plaintiff seeks relief for the denial of a FAPE and a remedy the IDEA provides, he must exhaust the

6

statute's administrative processes regardless of the law on which he bases his claim. *Luna Perez*, 143 S. Ct. at 865; *Fry*, 580 U.S. at 165. We determine whether a suit seeks relief for the denial of a FAPE by looking to "the substance, or gravamen," of the complaint. *Fry*, 580 U.S. at 165.

The IDEA's exhaustion requirement applies to every claim in Plaintiffs' complaint. Counts III, IV, V, and VI allege that Defendants failed to "comply with the IDEA" by failing "to ensure that all children with disabilities residing in [the jurisdiction] receive a free appropriate public education." J.A. 111, 112, 115, 116. These counts assert claims under the IDEA itself, so they necessarily invoke the statute's exhaustion requirement. *Cf. Fry*, 580 U.S. at 170 ("[Section] 1415(*l*)'s premise is that the plaintiff is suing under a statute *other than* the IDEA.").

While Counts I and II assert constitutional due process and equal protection violations, in substance they seek relief for the denial of a FAPE. Specifically, Counts I and II allege Defendants interfered with or deprived Plaintiffs of "their property and liberty interest in [a] FAPE, their property interest in an adequate IEP, and their liberty interest in an Impartial Due Process Hearing" under the IDEA. J.A. 108; *see* J.A. 110 (alleging deprivation of "neutral procedures applied by an impartial and unbiased decision maker" in IDEA due process hearings and "denial of [their] right to a free public education"). The gravamen of these counts is that Defendants have failed to comply with the IDEA's various procedural requirements, with the result that D.C., M.B., and other unnamed children have been denied a FAPE. Plaintiffs seek declaratory relief and injunctions requiring Defendants "to comply with" the IDEA in various ways. J.A. 119, 121, 122, 124, 127.

7

Both are "form[s] of relief" traditionally available under the IDEA. *Luna Perez*, 143 S. Ct. at 864; *see Sch. Comm. of Burlington*, 471 U.S. at 370.

Plaintiffs were therefore required to exhaust the IDEA's administrative processes before filing this action. The Chaplicks concede they did not do so because they did not pursue a due process hearing to challenge FCPS's decisions declining to conduct a new IEP meeting, refusing to pay for D.C.'s residential facility, and concluding that the private institution day program was sufficient to provide a FAPE to D.C.—the very decisions about which they complain in this lawsuit. Instead, they assert three grounds for an exception to the exhaustion requirement. We find none persuasive.

First, the Chaplicks argue that exhaustion would be "futile or inadequate . . . as a legal matter" because the administrative process cannot resolve their "wide-ranging" claims and provide commensurate relief. Opening Br. at 27; *see Honig v. Doe*, 484 U.S. 305, 327 (1988) (suggesting "parents may bypass the administrative process where exhaustion would be futile or inadequate"); *K.I.*, 54 F.4th at 793 & n.8 (recognizing a "narrow" futility exception). *But see Luna Perez*, 143 S. Ct. at 865 (declining to address "whether IDEA's exhaustion requirement is susceptible to a judge-made futility exception"). This argument fails for multiple reasons.

As an initial matter, administrative proceedings would not be futile or inadequate to resolve the Chaplicks' complaints about D.C.'s education. Had they pursued a due process hearing, the hearing officer would have been empowered to agree with their arguments about D.C.'s placement and award him what the Chaplicks, not FCPS, consider a FAPE. If the hearing officer awarded D.C. a FAPE, the Chaplicks would have no reason (and no

8

standing) to pursue this lawsuit. *See E.L.*, 773 F.3d at 516 (finding exhaustion would not have been futile "because the review officer clearly could have granted [the student] relief, had she availed herself of the opportunity to appeal"). Indeed, that's the purpose of administrative exhaustion: to give the state and local education agencies an opportunity to resolve a parent's concerns in the first instance. *See id.* at 514 ("The IDEA's exhaustion requirement serves the important purpose of allowing states to use their special expertise to resolve educational disputes.").

The Chaplicks respond that their complaint alleges systemic violations of the IDEA beyond those in D.C.'s individual case. As examples, they note allegations that hearing officers "rely on false testimony from school officials" and "routinely exclude parents' expert witnesses from testifying," Reply Br. 11, and allegations that Defendants "denied parents access to student records that are required by law" and "neglected to properly implement and oversee student IEPs," Opening Br. 36–37. Consolidating these individual claims into one lawsuit, however, does not erase the IDEA's exhaustion requirement; there is no class action exception. Unlike in *Heldman v. Sobol*, 962 F.2d 148 (2d Cir. 1992), on which the Chaplicks rely, the complaint here does not challenge the legality of a statute or regulation itself, only the manner in which those standards are implemented in specific cases. *See id.* at 159 (finding administrative exhaustion futile when plaintiff alleged that a state statute and its implementing regulation violated the IDEA). Nor is this case like *D.M. v. New Jersey Department of Education*, 801 F.3d 205 (3d. Cir. 2015), where the parent agreed with the student's IEP but sued the state department of education to challenge the State's regulation of a private school, which regulation prevented implementation of the

9

student's IEP. *See id.* at 208, 212. Instead, in cases like this one, courts consistently enforce the IDEA's exhaustion requirement. *See, e.g.*, *Roe v. Healey*, 78 F.4th 11, 26 (1st Cir. 2023) (concluding that "plaintiffs have failed to show that they are entitled to a systemic exception to the IDEA's exhaustion requirement, assuming without deciding that such an exception is available in this circuit"); *Student A ex rel. Parent A v. S.F. Unified Sch. Dist.*, 9 F.4th 1079, 1084 (9th Cir. 2021) ("To our knowledge, no published opinion in this circuit has ever found that a challenge was 'systemic' and exhaustion not required."); *Ass'n for Cmty. Living v. Romer*, 992 F.2d 1040, 1044–1045 (10th Cir. 1993) (enforcing exhaustion requirement despite claimed "systemic violation").

The Chaplicks emphasize that some of their claims challenge the competence and neutrality of hearing officers who preside over the due process hearings that are one step in the IDEA's administrative process. Those allegations do not exempt the Chaplicks from the statute's exhaustion requirement. Parents in Virginia can object to a hearing officer's appointment to their case.[1] 8 Va. Admin. Code § 20-81-210(H)(3). And dissatisfied parents can raise their arguments about a hearing officer's competence and neutrality when they pursue judicial review of the hearing officer's decision. *See, e.g.*, *Sch. Bd. of the City*

---

[1] "The Virginia Department of Education uses the impartial hearing officer system that is administered by the Supreme Court of Virginia." 8 Va. Admin. Code § 20-81-210(B). The Executive Secretary of the Supreme Court of Virginia manages the list of eligible hearing officers. *Id.* § 20-81-210(C). If a hearing officer refuses a parent's request to recuse himself from a case, the parent "may proceed to file an affidavit with the Executive Secretary." *Id.* § 20-81-210(H)(3)(a). If the Executive Secretary determines that the hearing officer should be disqualified, he will assign a new hearing officer. Va. Hr'g Officer Sys. R. of Admin. 4(B). The Executive Secretary also "has the authority to remove hearing officers" from the list of eligible officers on the Secretary's own initiative or upon the request of a party to an administrative matter. *Id.* 4(A).

10

*of Norfolk v. Brown*, 769 F. Supp. 2d 928, 937 (E.D. Va. 2010) (adjudicating school board's argument that hearing officer demonstrated a bias in favor of the student during due process hearing). The Chaplicks have not shown that administrative exhaustion would be futile or inadequate as a legal matter.

Second, the Chaplicks argue that administrative exhaustion would be "futile as a practical matter" because the hearing officers are so biased against parents that an adverse ruling is virtually certain. Opening Br. 40. This argument also fails. The Chaplicks contend that all Virginia hearing officers work under a conflict of interest because they are compensated by the Virginia Department of Education. Federal regulations implementing the IDEA, however, expressly recognize that state agencies may compensate their hearing officers. 34 C.F.R. § 300.511(c)(2). The Chaplicks also present statistics allegedly showing that hearing officers nearly always rule in favor of schools and against parents. The statistics do not demonstrate that any hearing officer is actually biased, nor do they suggest that the Chaplicks can gain nothing from the administrative process, which includes informal dispute resolution procedures that have generated favorable results for D.C. in the past. The IDEA's "model of cooperative federalism" vests States with the authority to adjudicate parental complaints in the first instance. *Schaffer*, 546 U.S. at 52 (internal quotation marks omitted); *see* 20 U.S.C. § 1415(f), (g). And as the district court explained, hearing officers, like other administrative officers, are entitled to a presumption of honesty and integrity. *D.C. v. Fairfax Cnty. Sch. Bd.*, No. 1:22-cv-01070, 2023 WL 4765583, at *6 (E.D. Va. July 25, 2023). Because the complaint's allegations fail to

overcome that presumption, the Chaplicks' practical futility argument cannot excuse their failure to exhaust.

Third, the Chaplicks argue that they did not need to exhaust their administrative remedies because this is a class action lawsuit and other plaintiffs, the Binghams, exhausted *their* administrative remedies on behalf of the entire class. Even if we were to accept the Chaplicks' premise, their argument fails because, as we will explain next, the district court permissibly dismissed the Binghams from this suit.

In sum, the Chaplicks have not shown that the district court erred in dismissing their claims for failure to exhaust their administrative remedies as the IDEA requires.

### III.

We turn next to M.B. and the Binghams. The district court dismissed their claims as duplicative of those in another lawsuit then pending in the district court before a different judge. "'Trial courts are afforded broad discretion in determining whether to stay or dismiss litigation in order to avoid duplicating a proceeding already pending in another federal court,'" and we review the district court's decision for abuse of that discretion. *Robertson v. Apker*, 700 Fed. App. 301, 302 (4th Cir. 2017) (quoting *I.A. Durbin, Inc. v. Jefferson Nat'l Bank*, 793 F.2d 1541, 1551–1552 (11th Cir. 1986)).

As a "general rule[,] . . . duplicative litigation [between two federal district courts] should be avoided." *Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 206 (4th Cir. 2006). Accordingly, a "district court may stay or dismiss a suit that is duplicative of another federal court suit as part of its general power to administer its docket." *Id.* at 207 n.6 (emphasis removed). A suit is duplicative of another if "'the parties, issues and available

12

relief do not significantly differ between the two actions.'" *Robertson*, 700 Fed. App. at 302 (quoting *I.A. Durbin*, 793 F.2d at 1551); *see also McClary v. Lightsey*, 673 Fed. App. 357, 357 (4th Cir. 2017) (same); *Cottle v. Bell*, 229 F.3d 1142 (Table), 2000 WL 1144623, at *1 (4th Cir. 2000) (same).

When M.B. and the Binghams joined this lawsuit as plaintiffs in the first amended complaint, they had their own IDEA case pending in federal district court. *See M.B. v. Fairfax Cnty. Sch. Bd.*, 660 F. Supp. 3d 508, 513 (E.D. Va. 2023). In that suit, M.B. and the Binghams alleged that FCPS had denied M.B. a FAPE by placing him in public school and refusing to fund his private school tuition. *See id.* at 513, 520. They sought to undo the hearing officer's determination that M.B.'s IEP satisfied the IDEA and provided him with a FAPE. *Id.* at 520.

The district court did not abuse its discretion when it determined that the Binghams' claims in the pending suit were "substantially similar to the ones [they] made in this case" and so dismissed the latter. *D.C.*, 2023 WL 4765583, at *7. "In both cases, the family ma[de] almost identical factual allegations." *Id.* The cases challenged the same decisions and sought relief for the same injury, FCPS's alleged denial of a FAPE to M.B. And as the district court observed, entertaining the Binghams' claims "would create a risk of dueling decisions coming from judges in the same courthouse." *Id.* The Binghams argue that this purported class action presents broader claims and seeks broader relief than their first-filed lawsuit, but the examples they offer demonstrate only that the class action device consolidates multiple individuals' similar grievances. They do not refute the district court's assessment that *the Binghams*' claims here duplicated those of their then-pending

lawsuit.[2]    Accordingly, the district court did not abuse its discretion by dismissing the claims brought by M.B. and the Binghams as impermissibly duplicative.

IV.

Lastly, we consider HOV's standing to bring this suit without the Chaplicks or the Binghams.  The district court dismissed HOV after concluding it lacked standing to sue on behalf of its members or in its own right.  We review that decision de novo.  *See S. Walk at Broadlands Homeowner's Assoc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 181 (4th Cir. 2013).

An organizational plaintiff "can assert standing . . . as a representative of its members."  *Id.* at 182; *see Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 143 S. Ct. 2141, 2157 (2023).  This associational, or representational, standing permits an organization to "assert the rights of absent third parties"—its members—and litigate on their behalf.  *United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.* (*UFCW*), 517 U.S. 544, 557 (1996) (internal quotation marks omitted).  Associational standing does not expand a third party's rights but allows an organization to "rais[e] [the] legal rights" of its members in their stead.  *Id.* (internal quotation marks omitted); *see also Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 342 (1977) ("[A]n association may have standing to assert the claims of its members.").

---

[2] While this appeal was pending, the district court presiding over the Binghams' first-filed lawsuit granted judgment in favor of FCPS.  *See M.B.*, 660 F. Supp. 3d at 529. The parties here dispute the res judicata effect of that decision, but we need not address their arguments because the district court in this case permissibly dismissed the claims as duplicative.

HOV cannot litigate this action on its members' behalf because it has not identified any member of its organization with the right to pursue these claims. *See UFCW*, 517 U.S. at 556–557 (acknowledging the prudential nature of the limits on representational standing). According to the first amended complaint, HOV's members include the Chaplicks, the Binghams, and other unidentified individuals. As we have explained, the Chaplicks cannot bring this suit because they failed to exhaust their administrative remedies as the IDEA requires. HOV therefore cannot assert any right to sue on behalf of the Chaplicks. Associational standing does not allow an organization "to escape the exhaustion requirement for the students they are purportedly representing." *Parent/Prof. Advoc. League v. City of Springfield*, 934 F.3d 13, 34 (1st Cir. 2019). To hold otherwise would be inconsistent with the IDEA's exhaustion requirement "and indeed an easy way to circumvent it." *Id.* Similarly, allowing HOV to bring claims on behalf of the Binghams that they could not bring themselves would contradict the premise of representational standing. *Cf. id.*; *UFCW*, 517 U.S. at 556–557; *S. Walk at Broadlands*, 713 F.3d at 183–184. As the district court observed, it also would "not cure the fact that those claims are duplicative and undercut the interest in judicial efficiency." *D.C.*, 2023 WL 4765583, at *3. HOV has not identified any other member on whose behalf it could pursue this lawsuit in a representational capacity. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009) (emphasizing that an organization must identify the members of whose behalf it is suing).

Organizations can also sue "on their own behalf" by satisfying "the usual standards for injury in fact, causation, and redressability that apply to individuals." *FDA v. All. for Hippocratic Med.*, 144 S. Ct. 1540, 1563 (2024) (internal quotation marks omitted). HOV

15

alleges that Defendants' IDEA violations have caused it "to divert its two principal resources, time and money, away from several of its core efforts" like legislative analysis "to address the harm caused by Defendants' [actions]" by undertaking activities like "[t]alking to parents," "[r]eaching out to regulators," "investigating the special needs education problems in Virginia," and "drafting op-eds on the problems with Virginia." J.A. 25–27.

HOV has failed to allege a cognizable concrete injury caused by Defendants' actions. The "diversion of resources" it alleges "results not from any actions taken by [Defendants], but rather from the [organization's] own budgetary choices," which cannot create a cognizable injury. *Lane v. Holder*, 703 F.3d 668, 675 (4th Cir. 2012) (internal quotation marks omitted); *see All. for Hippocratic Med.*, 144 S. Ct. at 1563–1564 ("An organization cannot manufacture its own standing" by "expending money to gather information and advocate against the defendant's action.").

HOV compares its injury to that of the organization in *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), but the comparison is inapt. "*Havens* was an unusual case." *All. for Hippocratic Med.*, 144 S. Ct. at 1564. There, the defendant's actions "directly affected and interfered with [the organization's] core business activities—not dissimilar to a retailer who sues a manufacturer for selling defective goods to the retailer." *Id.* Defendants' alleged IDEA violations "have not imposed any similar impediment to [HOV's] advocacy business[]." *Id.* Rather, as the district court observed, HOV alleges that Defendants' actions have compelled it "to do the very thing it was formed to do," which is advocate for "'appropriate and equal education services for students with

16

disabilities.'"  *D.C.*, 2023 WL 4765583, at *3 (quoting J.A. 25).  HOV therefore lacks standing to sue on its own behalf, and the district court correctly dismissed it from the case.

## V.

Having concluded that none of the Plaintiffs could properly bring this suit, the district court dismissed the complaint.  For the foregoing reasons, we affirm.

*AFFIRMED*

17

GREGORY, Circuit Judge, dissenting:

## I.

Plaintiffs allege in their complaint that the Fairfax County Public Schools and Virginia Department of Education "systematically" violate the Individuals with Disabilities Education Act ("IDEA") by preventing parents from receiving a fair hearing before IDEA hearing officers. J.A. 20–21. Among other allegations in the detailed complaint, Plaintiffs claim that from 2010 to 2021, ten of twelve hearing officers in Northern Virginia (where Fairfax County is located) ruled in favor of parents a combined zero times. They seek declaratory and injunctive relief to bring the IDEA due process hearings into compliance with federal law—in other words, relief that cannot be granted by the hearing officers themselves. I would join several of our sister circuits in recognizing that a claim of systemic procedural defects satisfies a futility exception to the IDEA exhaustion requirement, and therefore I would reverse the district court and remand for further proceedings.

## II.

States that accept federal funding under the IDEA commit to providing a free appropriate public education ("FAPE") to all children with certain disabilities. 20 U.S.C. § 1401(9). A child with a qualifying disability "acquires a substantive right" to a FAPE in states that accept federal funding under the IDEA. *Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154, 158 (2017) (internal quotation marks omitted). States primarily do this by providing an Individualized Education Program ("IEP"), a bespoke educational plan that accounts for the child's disability. 20 U.S.C. § 1414(d).

Anticipating that parents and local educational agencies will not always agree on a child's needs, the IDEA requires that states "guarantee[] procedural safeguards with respect to the provision of a [FAPE]." 20 U.S.C. § 1415(a). Among the mandatory procedural safeguards that a state must implement is an opportunity to "present a complaint with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a [FAPE]." 20 U.S.C. § 1415(b)(6). Whenever a complaint of this kind is submitted, the parents "shall have an opportunity for an impartial due process hearing" before an impartial hearing officer. 20 U.S.C. §§ 1415(f)(1)(A), 1415(f)(3)(A). In Virginia, the state Department of Education operates the system of due process hearings. *See* 8 V. Admin. Code § 20-81-210.

Plaintiffs claim that the structure of due process hearings in Virginia, and particularly in Fairfax County, systematically undermines the IDEA's guarantee of due process. The complaint contains allegations concerning illegal and unfair procedures that are too lengthy and numerous to list in full, so I will discuss some representative examples.

The complaint alleges that hearing officers consistently delay decisions past the 45-day deadline required by 34 C.F.R. § 300.515 without requests from any party. J.A. 57–58. For instance, one 2022 case saw a hearing officer backdate a decision by two weeks, which reduced the timeline for parents to appeal the decision. J.A. 58. Despite an instruction from the U.S. Department of Education's Office of Special Education Programs to track timelines for due process complaints, hearing officers frequently delay issuing decisions past regulatory deadlines. J.A. 57–58. This pattern inhibits parents' ability to appeal from adverse decisions.

19

The complaint suggests that hearing officers routinely accept fabricated data from local education agencies that shows students making false progress. J.A. 59–60. In one hearing, school officials testified that a student could read books and count to 50 even though they had been present at independent testing that proved the child could do neither. J.A. 59. In a 2022 case, a teacher testified that school policy prohibited her from giving grades below 50%, even when a student failed to submit any work. J.A. 60. These false reports undermine parents' attempts to obtain adequate IEPs for their children.

The complaint further alleges that VDOE and school officials routinely engage in improper *ex parte* communications with hearing officers. J.A. 61–64. One former hearing officer has reported that these VDOE "monitors" routinely advised him, outside the presence of parties, to disregard expert testimony offered by parents. J.A. 62. Another hearing officer asked a local school official to delay requesting a hearing so that this particular hearing officer could handle the hearing personally. J.A. 62–63. Hearing officers' *ex parte* communications with VDOE and school officials undermine the impartiality of the due process hearings.

Plaintiffs do not challenge any particular child's IEP. Instead, they seek injunctions against Fairfax County and the Virginia Department of Education to require them to cease these—and several other—purportedly routine unlawful practices. *See* J.A. 119–27.

III.

At issue here is whether any of the three sets of plaintiffs properly brought a claim before the district court. The district court dismissed each claim for a different reason; the

20

Chaplicks had not exhausted their administrative remedies, the Binghams had brought similar claims in a different lawsuit, and organizational plaintiff Hear Our Voices, Inc. ("HOV") lacked standing to sue. I would reverse the judgment of the district court on each of these conclusions. I discuss each in turn.

### 1. The Chaplicks

The first set of plaintiffs, Trevor and Vivian Chaplick, have for years been embroiled in a dispute with the Fairfax County School Board and the Virginia Department of Education over the educational opportunities afforded to their son, D.C. D.C. is an educationally disabled student with myriad challenges, including autism, ADHD, Tourette's Syndrome, and an intellectual disability. The complaint indicates that D.C. has difficulty controlling his aggressive outbursts, which have hospitalized himself and others on multiple occasions. In 2008, Fairfax County established an IEP for D.C. that placed him in a public school. On the advice of independent medical professionals, the Chaplicks requested that Fairfax County reconsider the IEP and place D.C. in a residential education facility. Fairfax County responded that D.C. was already receiving a FAPE in his current setting. In 2015, the Chaplicks requested a hearing under the IDEA, and a due process hearing officer rejected their claims. Fairfax County ultimately agreed to pay for a portion of what the Chaplicks requested, and the Chaplicks declined to request another hearing for that decision. At no point in the administrative process did the Chaplicks bring a broad-scale challenge to hearing officers' hiring, oversight, or decision making processes. However, since the Chaplicks never pursued a hearing to consider D.C.'s most recent IEP, the district court concluded that they had failed to exhaust their administrative remedies.

21

The IDEA authorizes judicial review of a due process hearing. 20 U.S.C. § 1415(i). Aggrieved parents cannot move directly into court; they must first "exhaust[]" the administrative processes provided by the IDEA. 20 U.S.C. § 1415(l). There is no dispute that the Chaplicks did not exhaust their administrative remedies. The only question is whether their failure to exhaust their administrative remedies is excused by an exception to the exhaustion requirement.

Several courts, including ours, have recognized exceptions to IDEA's exhaustion requirement: "(1) when the administrative process would have been futile; (2) when a school board failed to give parents proper notification of their administrative rights; [and] (3) when administrative exhaustion would have worked severe harm upon a disabled child." *M.M. ex rel. D.M. v. Sch. Dist. Of Greenville Cnty.*, 303 F.3d 523, 536 (4th Cir. 2002). The administrative process is not futile where "the review officer . . . could have granted . . . relief." *E.L. ex rel. Lorsson v. Chapel Hill-Carrboro Bd. of Educ.*, 773 F.3d 509, 516 (4th Cir. 2014). "The futility exception is particularly relevant in actions . . . that allege systemic violations of the procedural rights accorded by IDEA." *Heldman ex rel. T.H. v. Sobol*, 962 F.2d 148, 158–59 (2d Cir. 1992).

Several of our sister circuits have acknowledged that a claim of systemic procedural failures is an inherently futile one to raise before a due process hearing officer. In *Heldman*, the plaintiff alleged that New York's procedure for selecting hearing officers violated IDEA's guarantee of due process. *Id.* at 152. Noting that none of the officers within the administrative process had the authority to alter the challenged procedure, the Second Circuit explained that "it would be an exercise in futility" to require the plaintiff to proceed

22

through the administrative channels. *Id.* at 159. The Second Circuit emphasized that the policies underlying the exhaustion requirement—to allow agencies to bring its expertise to bear without court interference—are not implicated when a plaintiff challenges the structure of the proceedings, rather than an outcome. *Id.*

The Third Circuit reached the same conclusion. In *D.M. v. N.J. Dep't of Educ.*, parents of a disabled child challenged the New Jersey Department of Education's actions that prevented the implementation of the child's IEP. 801 F.3d 205, 209–210 (3d Cir. 2015). The Third Circuit determined that neither the IDEA nor New Jersey law provided an administrative process for a parent to challenge the action of the state agency; in other words, the due process hearing officer would have been helpless to grant relief. *Id.* at 212. Since "the administrative process would be unable to grant relief, . . . exhaustion of that process is unnecessary." *Id.*; *see also Beth v. ex rel. Yvonne V. v. Carroll*, 87 F.3d 80, 89 (3d Cir. 1996) ("[P]laintiffs may thus be excused from the pursuit of administrative remedies where they allege systemic legal deficiencies and, correspondingly, request system-wide relief that cannot be provided (or even addressed) through the administrative process.").

Our sister circuits are careful to distinguish claims of systemic failure, which need not be exhausted through the administrative process, from substantive claims regarding particular programs, which must first be considered through ordinary administrative channels. For instance, when the purported IDEA violations are limited to a single facility, these claims typically do "not rise to a truly systemic level in the sense that the IDEA's basic goals are threatened on a system-wide basis." *Hoeft v. Tuscon Unified Sch. Dist.*, 967 F.2d 1298, 1305 (9th Cir. 1992). The First Circuit has indicated that the futility

23

exception applies only when "the challenged violation has the practical effect of denying the plaintiffs a forum for their grievances, such as those that challenge the administrative process itself." *Roe v. Healey*, 78 F.4th 11, 26 (1st Cir. 2023). The Tenth Circuit has similarly explained that the futility exception should be confined to cases "where plaintiffs allege structural or systemic failure" or "assert violations of the IDEA's due process provisions." *Ass'n for Cmty. Living in Co. v. Romer*, 992 F.2d 1040, 1044 (10th Cir. 1993) (citing *Heldman*, 962 F.2d at 159).

In short, though they have formulated it with slight variation, every circuit to consider the question has indicated that plaintiffs need not exhaust the IDEA procedures when they allege systemic failure within the procedures themselves, particularly when the IDEA procedures cannot provide the requested relief. The alternative is to require plaintiffs to bring a claim of systemic injustice before the system itself, knowing that even if the system were capable of identifying its own shortcomings, it would be powerless to change them. But exhaustion does not mandate impotent procedures.

The Supreme Court recently embraced this principle in *Luna Perez v. Sturgis Pub. Schs.*, 598 U.S. 142 (2023), decided after the district court issued its ruling on exhaustion. There, the school system argued that the plaintiff had to exhaust his administrative remedies before filing suit for compensatory damages—even though all parties agreed that the requested damages could not have been granted through administrative processes. *Id.* at 145–46. *Luna Perez* does not control directly; the Supreme Court emphasized that the plaintiff brought suit under the ADA, not the IDEA, and expressly reserved the question of whether a futility exception exists for the IDEA's exhaustion requirement. *Id.* at 151.

24

But since we are bound by our own prior recognition of a futility exception, we should understand that exception in light of the Supreme Court's conclusion that a plaintiff need not exhaust the IDEA's administrative processes "if the remedy a plaintiff seeks is not one IDEA provides." *Id.* at 150.

The complaint here falls precisely within the futility exception. Plaintiffs allege that the hearing system, as currently operated, does not provide them a fair opportunity to vindicate their due process rights under the IDEA, and they seek declaratory and injunctive relief which would bring the system into compliance. They challenge the adequacy of the very procedures that the majority would force them into, and they request relief that those procedures cannot grant. As in *Luna Perez*, the question is "whether a plaintiff must exhaust administrative processes under IDEA that cannot supply what he seeks." *Id.* at 150. I would take the hint from our sister circuits and the Supreme Court and "answer in the negative." *Id.*

In my view, the majority minimizes and mischaracterizes the complaint. The majority suggests that the Chaplicks should exhaust their administrative remedies with respect to D.C.'s IEP, and if they feel that the hearing officer was biased against them, they may raise that issue on review of the hearing officer's decision. In the first instance, this rule would categorically bar class-action lawsuits under the IDEA. *See Califano v. Yamasaki*, 442 U.S. 682, 700 (1979) ("In the absence of a direct expression by Congress of its intent to depart from the usual course of trying 'all suits of a civil nature' under the Rules established for that purpose, class relief is appropriate in civil actions brought in federal court . . . ."). More to the point, this is not the typical case of a parent challenging

25

their child's IEP, or even an aggregation of parents challenging their children's IEPs. The gravamen of this complaint is that the fundamental injustices of the system prevent parents from exercising their rights under the IDEA and dissuade parents from making costly, doomed attempts to secure adequate education for their children. The claim which challenges a pattern is fundamentally different from the claim which challenges one interaction. As all parties seem to agree, the injunctive and declaratory relief sought by these plaintiffs could not have been granted by any hearing officer.

The plaintiffs in *Heldman* and *D.M.* could have taken the path that the majority prescribes here: tediously wind through hollow administrative proceedings until reaching a court that had authority to grant the requested relief. But the Second and Third Circuits acknowledged the absurdity of requiring plaintiffs to waste the hearing officer's, the state's, and their own time in farcical hearings. I would have held that the Chaplicks satisfy the futility exception to the IDEA's exhaustion requirement.

### 2. The Binghams

James and Sheila Bingham, parents of M.B., did exhaust their administrative remedies, but the district court determined that a different federal lawsuit precluded the Binghams from bringing a claim in this case. The Binghams challenged M.B.'s IEP before a due process hearing officer, and when their claims were denied, they filed an administrative appeal in federal district court requesting review of the hearing officer's decision. While that case was still active, the Binghams brought the suit that constitutes this case. The district court below, comparing this case to the Binghams's administrative appeal, determined that

26

"[b]oth cases seek to undo the hearing officer's determination on M.B.'s IEP request," and dismissed the Binghams's claims in this case as duplicative. J.A. 227.

For the same reasons I discussed above, the district court's conclusion was incorrect. If the Binghams were to prevail on their claims in this case, it would not undo M.B.'s IEP; plaintiffs made clear that they seek only declaratory and injunctive relief for a purported pattern of unlawful behavior. The Binghams's other lawsuit, which alleged that M.B.'s IEP violated his substantive rights under the IDEA, should not preclude their claims here that the administrative process violated their procedural rights under the IDEA. *See I.A. Durbin, Inc. v. Jefferson Nat'l Bank*, 793 F.2d 1541, 1551 (11th Cir. 1986) ("[T]he general rule is that a suit is duplicative of another suit if the parties, issues and available relief do not significantly differ between the two actions."). "[A] court abuses its discretion when it enjoins a party from proceeding in another suit that is not truly duplicative of the suit before it." *Smith v. SEC*, 129 F.3d 356, 361 (6th Cir. 1997). As these suits raise entirely distinct issues and proffer requests for different relief, I would hold that the district court abused its discretion by dismissing the claims brought by the Binghams.

### 3. Hear Our Voices, Inc.

Hear Our Voices, Inc. ("HOV") was established "to protect and advocate for the rights of persons with disabilities." J.A. 25. The Chaplicks, the Binghams, and other residents of Virginia and Fairfax County are members of HOV. The district court determined that HOV satisfied all requirements for an organization to bring suit on behalf of its members, but held that HOV did not have standing as a prudential matter because it could not identify any class members that were able to bring these claims on their own

behalf.  The majority agreed that HOV lacked standing because it could not identify any members with the right to pursue these claims.  Maj. Op. at 15.

Since I concluded that the Chaplicks and the Binghams each had a right to pursue these claims, I would have further held that HOV had standing to sue on behalf of its members, which include the Chaplicks and the Binghams.

IV.

Plaintiffs' allegations implicate the heart of the IDEA's due process guarantees. Even if an individual hearing officer were sympathetic to claims of systemic procedural injustice—an impossibility, if the allegations in the complaint are accepted as true—that hearing officer would have no authority to grant the declaratory and injunctive relief that plaintiffs seek.  Yet the majority holds that this double layer of futility does not qualify these plaintiffs for the long-recognized "futility" exception to the IDEA's exhaustion requirements.  I disagree, and therefore I respectfully dissent.